THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHRISTOPHER DENT, Defendant-Appellant.

First District (5th Division)   No. 1—91—3306

Opinion filed September 2, 1994.

Michael J. Pelletier and Maria A. Harrigan, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Peter Fischer, Judy L. DeAngelis, William John Healy, and Mary C. Morris, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

After a jury trial defendant, Christopher Dent (Dent), was convicted of first degree murder and sentenced to 45 years' imprisonment. He appeals, raising two issues: (1) whether the trial court erred by failing to conduct a *Batson* hearing (see *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712), and (2) whether Dent was denied a fair trial due to prosecutorial misconduct. Upon a thorough review of the record, we find no error in the trial court's determination that no *Batson* hearing was required and we affirm Dent's conviction.

Dent was charged with and found guilty of the August 4, 1990, shooting death of his former girl friend, Melanie Hill. The killing took place at 6726 Glenwood in Chicago at the apartment of Hill's then-current boyfriend, Sidney Crooks (Crooks). Crooks was an eyewitness to the murder and testified at trial.

Before discussing the evidence presented at trial, we shall discuss the jury selection that took place and which is being called into question by Dent on appeal.

When jury selection began, the trial court called 12 venirepersons' names and seated them in the jury box. The judge conducted *voir dire* of the first six persons and then tendered them to the parties. Both the State and defense were asked if they had any further questions for these prospective jurors. Neither party did so. A side bar was then held in chambers.

During the side bar the court noted that the defense requested criminal history sheets on all prospective jurors. The State responded that whenever any prospective juror had a criminal history and did not reveal this information during *voir dire*, there would be a motion to remove him for cause. The State then noted that one prospective juror, Isguerra, had an arrest for unlawful use of a weapon and did not reveal this during *voir dire*. The State also noted that another juror, Schultz, who admitted during *voir dire* that he was a convicted felon, had a very extensive criminal background, which was then reviewed. Soon thereafter the following colloquy took place:

"THE COURT: What about—do you have anything else Mr. Woods? Mr. Woods?

MR. BILYK (prosecutor): Judge, I think that it must be a mistake. There is no record on Mr. Woods. I can't—he can't be 41 years old, living in the city of Chicago, unemployed and not have been arrested.

THE COURT: Well, that's not true. But, it appears he lives at 5335 South Federal. High crime area. I am surprised he wasn't a victim. I think he sort of—was a victim. He said a woman—

MS. KOCH (defense): He knew got killed."[1]

After this exchange the State indicated that it would excuse Mr. Woods, moved to have Isguerra removed for cause and moved to have Schultz removed for cause. The court granted the motion on Isguerra, but denied it as to Schultz. The State then excused Schultz. The defense chose to excuse another prospective juror (Wentz). Thereafter, the side bar in chambers ended and the proceedings resumed with the court excusing the four above-named persons.

The next four venirepersons were then voir dired by the judge, a side bar was held (off record) and of these four prospective jurors, two were excused—Mr. Lane, who was a 62-year-old Cook County sheriff's deputy, and Sister Mary Shield, a nun with the Order of St. Joseph. Since the side bar was off record, the record does not reveal which party excluded these persons or whether they were excused for cause.

After jurors Lane and Shield were removed, the trial court voir dired the next two prospective jurors, Mr. Carmack and Mr. Echols. Mr. Carmack indicated that he was 74 years old, that he was a retired Chicago sanitation department worker, that he did not believe in the death penalty and was under a doctor's care for a blood clot in his leg. Mr. Echols indicated that he was 59 and had worked for the last 23 years as a trackman for the CTA. After a brief side bar off record, the court further inquired into Mr. Carmack's medical condition, asking what medications he was on. Mr. Carmack couldn't remember the name of the pills but thought that one was a blood thinner and one was a "water pill." He also indicated that he often took Tylenol for pain in his thigh. Immediately after this discussion, another brief side bar was held off record and then the court excused Mr. Carmack.

---

[1] Mr. Woods indicated on his jury form that he was not the victim of a crime. However, he revealed during *voir dire* that he was a widower and, when questioned about this, explained that his wife had been murdered in a pool hall and that the woman who killed his wife was prosecuted for the homicide and found guilty after trial. He stated that he had not testified because he "had not been present." It is unclear, however, if he meant he was not present at the murder or at trial. Mr. Woods also stated that he had two boys, one of whom was 19, who lived with their "auntie." They were both unemployed and not attending school.

After Mr. Carmack was excused, the defense requested a side bar in chambers. At this time the defense requested a *Batson* hearing, noting that the State had exercised five peremptory challenges, three of which had been used to exclude Afro-American persons (Woods, Lane and Carmack) from the jury. The trial court denied Dent's request for a hearing, stating that no inferences could be drawn from the striking of these three persons. The trial court noted that although the prosecution excluded three blacks, five jurors had already been accepted, three of whom were black. The court then went on to make the following statement:

"THE COURT: In addition to that, the previous side bar, there was a discussion about Mr. Woods. Mr. Woods lives in a Chicago Housing Authority Project building on the south side and in all likelihood, that on a rap check on his name only, without prints, that Mr. Woods would neither—has been a victim nor a defendant in a criminal case is—statistically is fortunate for him, but, again, that and other—without going into the State's particular reason, that has already been stated of record. Mr. Lane is not a police officer. He's a custodian of defendants that are waiting trial at Cook County jail. He, obviously, is someone who could have his personal safety in jeopardy serving on a jury coming in with a guilty on a case such as this. Mr. Carmack, even though this is not a death penalty case, indicating that he is against the death penalty does give some indications that for a [*sic*] legitimate basis for the State to exercise a preemptory challenge. For all those reasons, motion is denied."

Dent now claims that the trial court erred by refusing to find that a *prima facie* case was established and requests a remand for a *Batson* hearing in which the State is required to proffer race-neutral reasons for exercising its peremptories on the three black venirepersons. Dent points to the above-cited remark made by the prosecutor during the first side bar as evidence that the prosecutor made presumptions about Mr. Woods which indicated that he was "of a mind to discriminate." See *People v. Sims* (1993), 249 Ill. App. 3d 246, 251, 618 N.E.2d 1083.

For 300 years American jurisprudence considered peremptory challenges in jury cases sacrosanct. A party had the absolute right to use the peremptory challenges allowed it by statute for any reason or no reason at all. Then, in 1986, the United States Supreme Court held that the equal protection clause of our Federal constitution prohibited the prosecution from excluding, by peremptory challenge,

prospective jurors "solely on account of their race."[2] *Batson*, 476 U.S. at 89, 90 L. Ed. 2d at 83, 106 S. Ct. at 1719.

■ In accordance with *Batson* and its progeny, however, before the prosecutor is required to explain its use of peremptory challenges, the defendant must first establish a *prima facie* case of purposeful discrimination. A *prima facie* case is not established by the mere showing that a number of black venirepersons have been stricken by the prosecution. (*People v. Hooper* (1989), 133 Ill. 2d 469, 552 N.E.2d 684.) Rather, the defendant must show facts and circumstances that raise an inference that the prosecution has exercised its peremptory challenges to exclude persons from the jury on the basis of their race. (*People v. Holman* (1989), 132 Ill. 2d 128, 547 N.E.2d 124; *People v. Lovelady* (1991), 221 Ill. App. 3d 829, 582 N.E.2d 1217.) Circumstances that are relevant to the issue of whether a *prima facie* case has been established include: (1) a pattern of strikes against black venirepersons; (2) the prosecutor's questions and remarks when conducting *voir dire* and when exercising his peremptory challenges; (3) a disproportionate use of peremptory challenges against blacks; (4) whether the excluded blacks are a heterogeneous group sharing race as their only common characteristic; (5) the level of black representation on the venire as compared to the jury; (6) the race of the defendant and the victim; and (7) the race of the witnesses. (*People v. Henderson* (1990), 142 Ill. 2d 258, 568 N.E.2d 1234; *People v. Mahaffey* (1989), 128 Ill. 2d 388, 539 N.E.2d 1172.) A trial court's finding that no *prima facie* case has been established will not be disturbed unless it is against the manifest weight of the evidence. *People v. Brisbon* (1989), 129 Ill. 2d 200, 544 N.E.2d 297; *Mahaffey*, 128 Ill. 2d at 413, 539 N.E.2d at 1184.

Once the defendant has been successful and the trial court determines that a *prima facie* case has been established, the burden then shifts to the State to present race-neutral reasons for having excluded the minority venireperson. (*People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 453.) At that point the trial court, having considered the State's proffered rationale for exercising its peremptory challenges, must decide whether the reasons are merely pretextual and whether discrimination has taken place. *Hernandez v. New York* (1991), 500 U.S. 352, 114 L. Ed. 2d 395, 111 S. Ct. 1859.

In this case the trial court found that no *prima facie* case was

---

[2]In 1844, over 142 years before the *Batson* decision, Lord Denham and two of his colleagues condemned the use of peremptory challenges to exclude Roman Catholics as jurors in the case of Daniel O'Connell, "The Liberator." M. Hayden and G. Moonan, Short History of Irish People 495 (1921).

shown by the defense and, therefore, refused to require the State to explain its use of peremptory challenges. As stated earlier, a reviewing court will find that the trial court erred in determining that no *prima facie* case had been established if it finds that the trial court's decision is against the manifest weight of the evidence, in light of all the relevant circumstances. In this case we cannot say that the trial court's determination was against the manifest weight of the evidence.

Initially, we note that the defense requested a *Batson* hearing after only 12 prospective jurors had been voir dired and after the State used three out of five peremptory challenges to exclude black venirepersons. Subsequently, 25 more prospective jurors were voir dired, and seven jurors and two alternates were selected. A *Batson* motion was never renewed by the defense, perhaps because no further peremptories were exercised by the State (although the defense excused seven more prospective jurors, at least one of whom was black). In addition, we do not know what the final racial composition of the jury was because, after the *Batson* motion was denied, no indication was given as to the race of the venirepersons who were called and voir dired. We, therefore, limit our review of this issue to the State's exercise of its peremptories to remove the three black prospective jurors, Woods, Lane and Carmack.

■ The main point relied upon by Dent is that, at the time the defense made the *Batson* motion, the State used three out of five peremptories to exclude black jurors. However, Dent fails to consider the fact that three of the five jurors already selected were black. Due to this fact, coupled with the fact that the State did not use a disproportionate amount of peremptory challenges to exclude blacks, we conclude, as the trial court did, that no pattern of strikes against black venirepersons was shown. The mere fact that three black persons were excused by the State was insufficient evidence of a discriminatory intent.

Furthermore, we do not agree that the prosecutor's side-bar comment regarding Mr. Woods is evidence of a discriminatory intent. In context, the prosecutor's remark was more indicative of a concern regarding Mr. Woods' veracity, a feeling that his claim to have had no contact with the criminal justice system was disingenuous, based upon his circumstances. The remark was made at a time when the State, upon a defense request, was revealing the criminal history of prospective jurors. At this time it was noted that Mr. Isguerra, who was not black, had failed to reveal his past criminal involvement and he was removed for cause on that basis. Also at this time, the State excused Mr. Schultz, who was not black, due to his extensive crimi-

nal history. Thus, we find that the trial court's determination that no *prima facie* case of discrimination had been shown was not against the manifest weight of the evidence.

We are aware that our Illinois Supreme Court has cautioned that neither a trial court nor a reviewing court should "presume, or infer from the facts of the case, that an unarticulated neutral explanation [for exercising a challenge] exists." (*People v. Harris* (1989), 129 Ill. 2d 123, 184, 544 N.E.2d 357.) We do not mean to imply by our comments above that we are presuming a nonracial motive for the State's exercise of its peremptory challenges. Rather, we have merely considered all of the relevant circumstances in assessing whether the trial court erred in determining that no inference of discriminatory intent was shown.

We now turn our attention to Dent's second claim of error, that he was denied a fair trial due to various incidents of prosecutorial misconduct throughout the trial. Specifically, Dent contends that the State improperly bolstered the credibility of its main witness, Sidney Crooks, by informing the jury that Crooks lacked a criminal record and by improperly eliciting testimony that Crooks made prior statements consistent with his trial testimony. Dent also contends that he was unfairly prejudiced when the prosecutor made an unsubstantiated statement, in rebuttal closing argument, that Dent would have shot Crooks if Dent had had more bullets in his gun.

The State argues that the entire issue has been waived because defendant failed to properly preserve the matters for review. The State points out that defendant failed to raise specific objections at trial and never raised these specific errors in his post-trial motion for new trial. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124 (failure to make a specific objection at trial or to raise the issue in post-trial motion waives the matter for review).) The State also argues that, even if the matter isn't waived for review, the errors claimed by Dent, if indeed error, were harmless beyond a reasonable doubt.

■ Our review confirms that Dent failed to cite as error, in his post-trial motion, the prosecutor's remark made in closing argument. We, therefore, find that Dent has waived this point for review. In addition, we find no merit in Dent's claim that the State improperly bolstered the credibility of its witness, Sidney Crooks.

Having reviewed the transcripts of the trial in this case, it is clear that the defense strategy was to shift the blame for the murder of Melanie Hill from Dent to the State's witness, Sidney Crooks. Defense counsel attempted to implicate Crooks as the murderer, attempted to show that Crooks was initially under suspicion by the police and that Crooks omitted pertinent information when he gave

his statements to police after the shooting. When the State attempted to rehabilitate its witness, the defense objected to its questions on the grounds of relevancy or hearsay. The trial court ruled that the defense had "opened the door" by calling into question these same issues. We agree.

It is a long-settled principle that the admission of evidence is within the sound discretion of the trial court and that the trial court's decision to allow certain testimony will not be overturned absent a showing of an abuse of discretion. (*People v. Batinich* (1990), 196 Ill. App. 3d 1078, 554 N.E.2d 613.) Under the circumstances described above, we cannot say that the trial court abused its discretion in allowing the prosecution to elicit the testimony that Dent now claims as error.

Furthermore, even if we were to find that the trial court had erred, we would have found that the admission of the complained-of evidence was harmless beyond a reasonable doubt. In addition to Sidney Crooks' testimony as an eyewitness to the shooting, the State also produced two witnesses, Mary and Gay Gay Palmer, who testified that they saw Dent shortly after the shooting took place and that Dent admitted to them that he had just shot Hill. Their testimony was particularly compelling because they did not even know Crooks, but knew Dent because he had been living with their sister, Sharon Palmer, in their household. In addition, the Palmer sisters further testified that Dent came to their residence after the shooting to retrieve his clothing, stating that he had to get away. Dent was subsequently arrested in Michigan. In light of the overwhelming evidence of Dent's guilt, any error in the admission of the evidence complained of by Dent was harmless beyond a reasonable doubt.

For the reasons stated above, we affirm Dent's conviction and sentence.

Affirmed.

GORDON and McNULTY, JJ., concur.