THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
PETER SIMS, Defendant-Appellant.

First District (3rd Division) No. 1—84—1875

Opinion filed June 30, 1993.

Rita A. Fry, Public Defender, of Chicago (Elyse Krug Miller, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Guy L. Miller IV, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE TULLY delivered the opinion of the court:

Following a jury trial, defendant Peter Sims was found guilty and sentenced to serve 66 years for murder, 30 years for attempted murder and 20 years for armed robbery, the sentences to run concurrently. On appeal, defendant contends he is entitled to a new trial based upon the State's discriminatory use of peremptory challenges, excluding all African-American venirepersons from the jury.

Defendant Sims is of African-American heritage. In selecting the jury, the State exercised eight peremptory challenges to exclude the following persons: Lewis Kenny, Isadore Keelan, Hertha Bailey, Oterah Hudson, Stewart Sims, John Gordon, Jon Subak, and Thomas Pool. With the exception of Jon Subak and Thomas Pool, all of the excluded persons were African-American.

Following defendant's motion for a mistrial, which was denied, the trial court found there was no racial discrimination in the State's jury selection. While this case was pending on direct appeal, the United States Supreme Court decided the cases of *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, and *Griffith v. Kentucky* (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708. *Batson* held that a defendant may establish a *prima facie* case of racial discrimination based upon a prosecutor's use of peremptory challenges to dismiss members of a defendant's race. Once a defendant makes a *prima facie* showing, the burden shifts to the State to offer race-neutral explanations for the peremptory challenges. Likewise, in *Griffith*, the Court held that the *Batson* ruling applies to cases pending on direct appeal at the time *Batson* was decided.

This court subsequently held, in applying *Batson* to the case below, that defendant had established a *prima facie* case of racial discrimination against African-Americans in the selection of the jury. Accordingly, we remanded this case to the circuit court of Cook County

for a *Batson* hearing, wherein the State was required to present race-neutral explanations for the exclusion of the six aforementioned African-American venirepersons. See *People v. Sims* (1987), 154 Ill. App. 3d 528, 507 N.E.2d 178.

The *Batson* hearing was held on April 26 and May 23, 1989, nearly five years after the original trial. Defense counsel motioned for a new trial based upon the length of time that had elapsed since the original trial as well as the fact that the State had failed to preserve its *voir dire* notes. The motion was denied, leaving the State to recall its reasons for exclusion based upon the memory of Chris Cronson, one of the prosecutors from the original trial who was present at the *Batson* hearing.

Six African-Americans were excluded from the jury. The first, Lewis Kenny, was a retired United States postal worker. He was excluded based upon Cronson's opinion that postal workers were dishonest and had no respect for the law. He was also excluded for being retired, single and childless.

The second prospective juror, John Gordon, once lived in the same police district in which a testifying police officer worked. Gordon also had children the same age as the defendant who could have "police ties" or "negative contacts" with the police in that district.

Isadore Keelan was excluded because he had recently moved and the State believed he was, therefore, in a transient or unstable situation. He was also considered unstable because he was 62 years old, worked as a stock man in a shoe store and his general demeanor suggested he "could create problems in the deliberation process."

Hertha Bailey was excluded solely because of her occupation as a United States postal worker.

Oterah Hudson was excluded because she resided in the crime vicinity, she rents her living quarters, and she may have had negative contacts with police officers. Additionally, she was considered unstable since she was unmarried and had two children.

Stewart Sims was excused because he was unemployed, did not own a home and he had to support numerous children. In addition, having the same last name as the defendant might produce bias in favor of the defendant, although there was no evidence that the two men were related.

Two Caucasian jurors selected, Joseph Molinare and Betty Dunne, were both unemployed, the former being a student and the latter a housewife. Molinare and Darlene Feeny, another Caucasian juror selected, were also both renters and did not own homes.

Finding all of the preceding explanations by the State to be "race-neutral," the trial court denied defendant's motion for a new trial. Although the trial court commented on the impropriety of excusing two jurors solely based upon their employment as postal workers, the court found the exclusions to be race-neutral.

To establish a *prima facie* case under *Batson*, first defendant must show that he is a member of a cognizable racial group and that the prosecutor removed a member of the defendant's race from the venire by peremptory challenge. Second, defendant may rely on the fact that a peremptory challenge permits discrimination by those with a mind to discriminate. Finally, defendant must show that these facts, viewed in light of any other relevant circumstances, raise an inference that a potential juror was excluded on account of his race. *Batson*, 476 U.S. at 95-96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1722.

The burden shifts to the State to provide race-neutral reasons for excluding the prospective jurors, after the defendant has presented a *prima facie* case of racial discrimination. These neutral explanations must be clear, reasonably specific and related to the particular case which the jury will hear. (*Batson*, 476 U.S. at 98 n.20, 90 L. Ed. 2d at 88 n.20, 106 S. Ct. at 1724 n.20.) A prosecutor may not merely assert good faith or generally deny a discriminatory motive in selecting jurors. The trial court must then make a finding as to whether the State purposefully discriminated in light of all relevant circumstances. A trial court's determination as to intentional discrimination is a finding of fact and will not be overturned unless it is against the manifest weight of the evidence. *Batson*, 476 U.S. at 98 n.21, 90 L. Ed. 2d at 89 n.21, 106 S. Ct. at 1724 n.21; *People v. Mack* (1989), 128 Ill. 2d 231, 238, 538 N.E.2d 1107; *People v. Mahaffey* (1989), 128 Ill. 2d 388, 413, 539 N.E.2d 1172.

In deciding whether the defendant has made the requisite showing, the trial court may consider whether there existed a pattern of strikes against members of the defendant's race. (*Batson*, 476 U.S. at 97, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723.) Moreover, the prosecutor's statements and questions during *voir dire* examination may substantiate an inference of discrimination.

■ We initially observe that unemployment has been recognized as a valid race-neutral explanation in the jury selection process. (*People v. Morgan* (1991), 142 Ill. 2d 410, 435, 568 N.E.2d 755 (explanation sufficiently based upon unemployment and lack of ties to community); *People v. Mack*, 128 Ill. 2d at 241 (one venireman was excused due to an unstable job history and another because of unemployment).) We note, however, that the unemployment explanation must

be viewed within the larger context of the entire selection process and whether or not there appears to be a pattern of racially motivated strikes. Stewart Sims was apparently excluded because he was unemployed. However, two Caucasian jurors who were selected were also unemployed. The State considered them to be more "stable" since one was a student and the other a housewife. Although this explanation sufficiently calls into question the motives of the State, we do not find the trial court's finding as to Sims to be against the manifest weight of the evidence.

■ The exclusion of Lewis Kenny and Hertha Bailey because they were employed by the United States Postal Service inherently contradicts the State's concern with employment status and stability. The State's reliance on the unfounded notion that postal workers are "dishonest and have no respect for the law" smacks of the kind of nonspecific, subjective and racially suspect explanations which the Supreme Court hoped to obliterate via the *Batson* decision. The trial court even opined that the explanation was arbitrary and improper. This kind of baseless explanation should have been a warning signal to the trial court to employ a heightened scrutiny in examining the remaining explanations, in order to make a reasoned decision as to a pattern of racial discrimination.

In light of our finding that mere employment as a postal employee is not a sufficiently race-neutral explanation for excluding a venireperson, we turn to the remaining explanations. Isadore Keelan was excluded because he had recently moved and because, at the age of 62, the State would have expected him to be employed at a level beyond a stock person at a shoe store. This explanation is not only ludicrous but it bespeaks a brand of bourgeois arrogance on the part of the State in deciding what "level of employment" a man of 62 years should possess. Apparently, not only does the State want its jurors to be employed, but it wishes to fill the jury with its own choice of professional.

■ We next consider the exclusion of John Gordon because he formerly lived in the same police district as a testifying policeman and his children may have had "negative contacts" with the police. Since no specific information was known about Gordon's children, we find that the kind of presumptions being made by the State in this instance are highly subjective and the type which could be conveniently employed by those with a mind to discriminate. It would be a different case if defense counsel moved to dismiss a venireperson who lived in the vicinity of the crime, since such a person might fear his safety in the community and form an unfair bias against the defendant.

However, in this instance, the State is making an unfair presumption that Gordon's children might themselves be criminally inclined, creating "negative contacts" with local police.

 Oterah Hudson was also dismissed for living in the same police district and because she was an unwed mother. We find that the mere status of a person as an unwed mother or father is not a legitimate race-neutral explanation for excusing a prospective juror. Moreover, no specific facts were presented supporting the State's unfounded presumptions that Hudson or her children may have had negative contacts with the police.

 Although we concur with the court's ruling as to Stewart Sims on the basis of his unemployment, we find that the trial court's ruling as to the remaining five venirepersons was manifestly erroneous. The explanations of the State as to all five were clearly insufficient to rebut the defendant's *prima facie* showing of discrimination.

Because we find that the State failed to present legitimate race-neutral reasons for its use of peremptory challenges in dismissing five of the six African-Americans eliminated from the jury selection, we must remand this case for a new trial. We, therefore, need not address defendant's remaining issues on appeal.

Reversed and remanded.

RIZZI and CERDA, JJ., concur.