THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DERRICK THURMOND, Defendant-Appellant.

First District (6th Division)    No. 1—99—0924

Opinion filed December 1, 2000.

Michael J. Pelletier and Michael H. Orenstein, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Janet Powers Doyle, and Theodore R. Eppel, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

In August 1997, the State charged defendant Derrick Thurmond, with two counts of criminal sexual assault pursuant to section 12—13(a)(3) of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/12—13(a)(3) (West 1998)). In January 1999, a jury found defendant guilty on both counts. The trial court sentenced defendant to two concurrent eight-year prison terms. Defendant appeals, arguing that (1) the State failed to articulate adequate and legitimate race-neutral reasons for peremptorily striking minority venirepersons; (2) the trial court improperly denied defendant probation; (3) the trial court did not properly apply factors of aggravation and mitigation; (4) the trial court waged improper personal attacks on defendant, his religious beliefs, his wife, his defense counsel, and his mitigation witnesses; and (5) the cumulative effect of the judge's sentencing error warrants remand for a new sentencing hearing before a different judge. We affirm.

## I. BACKGROUND

In January 1998, defendant filed a motion to suppress genetic evi-

dence, arguing that it was improperly seized. In May 1998, the trial court granted defendant's motion. The State does not appeal that ruling.

In December 1998, the parties made their opening statements and testimony began. The following evidence was adduced at trial. Defendant's wife, Sybil Thurmond, had a niece, A.S., born in August 1981. In 1993, the Illinois Department of Child and Family Services (DCFS) removed A.S. from her mother's care and placed her with Sybil. At that time, defendant and Sybil became A.S.' foster parents. Both A.S. and her younger sister lived with defendant and Sybil.

A.S. testified that, when she was 12 years old, defendant began touching her "in wrong spots." According to A.S., defendant would "raise up [her] gown, rub all of [her] butt cheeks, and kiss [her] too hard." Defendant would wear no pants and would "pull [A.S.'] underwear in the crack of [her] anus area and get on [her] and hump."

A.S. further testified that this touching occurred often, at night, on her bed, and usually while her younger sister slept in the same room. She testified that defendant told her not to fall asleep in her clothes but, rather, to wear a nightgown instead.

In 1996, defendant and Sybil asked A.S. to work at the Christian bookstore the couple owned. A.S. stated that, while working in the bookstore's back room, defendant approached her, pulled her skirt up, pulled her underwear down, and had intercourse with her.

This was not the only bookstore encounter that A.S. reported. She testified that, on another occasion, defendant put her on a couch in the back room and rubbed aloe lotion on her vagina and then inserted his penis inside her. A.S. stated that she felt pain and asked defendant to stop. However, defendant continued, telling her to "relax." According to A.S., defendant subsequently told her that he was sorry and that it would not happen again. However, A.S. testified that defendant continued to have intercourse with her at the bookstore.

In June 1997, defendant reportedly had intercourse with A.S. again. According to A.S., defendant picked her up from school in a van that had a couch in the back. Defendant took A.S. into the back of the van, poured baby oil on A.S.' vagina, and had intercourse with her. She reported that they had intercourse in the van on at least two other occasions.

A.S. also testified that in July 1997, defendant came home from work, entered her bedroom, pulled down his shorts, and had intercourse with her. Defendant did not use a condom and ejaculated on A.S.' T-shirt. The next day, A.S. told Sybil that defendant was having intercourse with her. At Sybil's request, A.S. described defendant's penis and showed Sybil the T-shirt that she wore the previous night.

A.S. testified that she hesitated to tell anyone about defendant's misconduct because she feared that no one would believe her. She also feared that she could become separated from her younger sister. By the time she testified, A.S. estimated that she had sex with defendant approximately 25 times. She also stated that she received "crab lice" from her encounters with defendant.

Mazzie Harris also testified for the State. She testified that she is a DCFS investigator and that DCFS learned of defendant's alleged abuse via its DCFS hotline. Harris stated that she interviewed A.S. and that, as A.S. discussed her case, she appeared embarrassed and nervous. After talking with A.S., Harris notified the police as to defendant's alleged conduct.

Bruce Willand testified that he is a Chicago police department youth investigator. He testified that he began his investigation in August 1997 and that he interviewed A.S. According to Willand, A.S. told him about her encounters with defendant at the bookstore and that she had sex with defendant around 30 times.

In January 1999, a jury found defendant guilty on both counts. The trial court then conducted a sentencing hearing and considered matters relating to aggravation and mitigation. The trial court then rejected defendant's request for probation, finding that defendant committed a crime that was "morally wrong" and that "shocks the conscience." The trial court further held that a sentence of probation would "deprecate the serious nature of the offense in this case." The court sentenced defendant to two concurrent eight-year prison terms. In February 1999, the court denied defendant's motion to reconsider. Defendant then filed the instant appeal.

## II. ANALYSIS

### A. *Batson* Claim

■ Defendant first argues that the State misused its peremptory jury challenges in a racially discriminatory manner. See *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986). Defendant concedes that, while he raised this issue to the trial court during *voir dire*, he failed to raise it in a posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988), *cert. denied*, 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274 (1988) (holding objection and a posttrial motion are generally necessary to preserve an issue for appeal). However, our supreme court, in *People v. Mitchell*, 152 Ill. 2d 274, 285 (1992), held that a defendant who objects to the State's use of peremptory challenges but fails to raise a *Batson* claim in a posttrial motion does not necessarily waive his or her claim on review. See also *People v. Whaley*, 184 Ill. App. 3d 459, 465 (1989) (Justice Freeman, writing for the ma-

jority, opined that defendants need only make a timely objection during the *voir dire* to preserve a *Batson* claim for appeal). Therefore, we proceed to the merits of defendant's *Batson* claim.

■ Under *Batson*, a defendant objecting to the State's use of peremptory challenges must first establish a *prima facie* case of purposeful discrimination during jury selection by demonstrating that relevant circumstances raise an inference that the State exercised peremptory challenges based upon prospective jurors' race. *Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87-88, 106 S. Ct. at 1723; *People v. Heard*, 187 Ill. 2d 36, 53 (1999). In considering whether a party has established a *prima facie* case, courts consider: (1) the racial identity between the defendant and the excluded venirepersons; (2) a systematic pattern of strikes against black venirepersons; (3) a disproportionate use of peremptory challenges against black venirepersons; (4) the level of black representation in the venire as compared to the jury; (5) the opponent counsel's questions and statements during *voir dire* examination and while exercising peremptory challenges; (6) whether the excluded black venirepersons were a heterogeneous group sharing race as their only common characteristic; and (7) the race of the defendant, victim, and witnesses. *Heard*, 187 Ill. 2d at 53-54. We will not disturb a trial judge's determination of whether a defendant has demonstrated a *prima facie* case of discriminatory jury selection unless it is against the manifest weight of the evidence. *Heard*, 187 Ill. 2d at 54.

■ If the defendant establishes a *prima facie* case, the burden shifts to the State to articulate a race-neutral explanation for challenging the venirepersons in question. If the State provides a race-neutral explanation, the trial judge must consider this explanation and determine whether the complaining party has established purposeful racial discrimination. *Batson*, 476 U.S. at 96-98, 90 L. Ed. 2d at 87-89, 106 S. Ct. at 1723-24; *Heard*, 187 Ill. 2d at 54. The trial judge's determination on the ultimate issue of discrimination is entitled to great deference and will not be disturbed unless it is clearly erroneous. *Heard*, 187 Ill. 2d at 54.

■ Defendant specifically points to the State's dismissal of two venirepersons and argues that the State failed to articulate an adequate, nonpretextual, race-neutral reason for dismissing each of them. The first stricken venireperson at issue was Abdul-Rasheed Akbar. The State provided the following reason for exercising a peremptory challenge against Akbar:

> "He is a teacher as well as an administrator with the board of education. Likewise, his wife is a teacher. The victim in this case was 15 years of age at the time this happened, approximately the

same age of a school child. With the experiences some teachers have with children in schools, we are afraid that will prejudice them against the victim."

Defendant contends that this reason does not constitute an adequate, nonpretextual justification for the State's strike. Rather, defendant argues, the State's reason constitutes the type of generalization that was rejected in *People v. Sims*, 249 Ill. App. 3d 246, 250 (1993). We disagree.

In *Sims*, the State struck United States Postal Service employees based upon the unfounded notion that postal workers are "dishonest and have no respect for the law." *Sims*, 249 Ill. App. 3d at 250. The court found that such justification smacked of the nonspecific, subjective, and racially suspect explanations that *Batson* sought to obliterate. *Sims*, 249 Ill. App. 3d at 250. We find the ruling in *Sims* inapposite. Here, the State explains that "persons employed in the educational field may have experience with false accusations of child molestation." We find that the State's explanation for striking Mr. Akbar does not rise to the level of nonspecific, suspect status as that rejected in *Sims*. Further, in the instant case, defendant deemed A.S.' molestation accusations false and directly challenged A.S.' credibility. Thus, under the circumstances, the State could legitimately consider whether venirepersons employed in a field that is not unfamiliar with molestation claims and fabrication allegations could have a bias. In sum, we conclude that defendant simply fails to convince us that we must reject the trial court's finding on this matter.

■ The second stricken venireperson was Francis Winters. The State explained that it struck Ms. Winters because:

"[She] has a child that is 22-years-old. Unfortunately, he doesn't work. The defendant in this case does not work principally as a result of this case. We are worried that there may be some affiliation with that. Additionally, we expect as a witness in this case the defendant's wife, who is approximately Ms. Winter's age and apparently the same status, judge."

Defendant contends that this explanation constitutes a pretext, basing his argument on two reasons. First, citing *People v. Gaston*, 256 Ill. App. 3d 621 (1993), and *People v. Powell*, 224 Ill. App. 3d 127 (1991), defendant argues that the employment status of a venireperson's relative is irrelevant. We disagree. In *People v. Harris*, 164 Ill. 2d 322, 341 (1994), our supreme court held that "the unemployment of a prospective juror's spouse is a valid concern and may be considered by the prosecutor at least in combination with other circumstances." We conclude that the trial court could have properly deemed the State's concern legitimate and nonpretextual. No sufficient basis exists for us to reject that finding.

Second, defendant argues that the State's explanation constitutes a pretext because it did not dismiss other venirepersons with similar characteristics. While inconsistent application of a factor may indicate impropriety, it is not necessarily dispositive. As our supreme court held in *People v. Young*, 128 Ill. 2d 1, 23-24 (1989), "[t]hough a part of the prosecutor's explanations may have been applicable to white jurors who were not challenged, the white jurors may have, in some other respect, exhibited a trait which the prosecutor reasonably could have believed would make him or her desirable as a juror."

Defendant first points to venireperson Ronald Osiol, who was unemployed. While Osiol indeed stated that he was unemployed, he also testified that both he and family members had been crime victims. He further stated that he had previously served on a jury and that he had friends who were police officers.

Defendant also points to several venirepersons who were somewhat close to Ms. Winters' age but were not stricken. First, we must note that the record does not indicate the age or race of venirepersons Karen Aragosa, Juan Horton, and David Holmgren. As appellant, defendant bears the responsibility of preserving this record appeal. *People v. Edwards*, 74 Ill. 2d 1, 6, 383 N.E.2d 944, 946 (1978). Because appeals involving the propriety of *voir dire* are factual in nature, we cannot review such an issue without an adequate record. *People v. Prante*, 147 Ill. App. 3d 1039, 1063, 498 N.E.2d 889, 905 (1986). Therefore, we deem this argument forfeited.

Even if we were to reach the merits of defendant's argument, we would conclude that it lacks merit. Ms. Aragosa indicated that her daughter was a sexual assault victim. Additionally, she testified that she was the victim of indecent exposure. Finally, Ms. Aragosa testified that she had served on a jury in another criminal trial. Mr. Horton testified that he was a firefighter and therefore had strong ties to the community. He and his family had been robbed at gunpoint and, thus, could be perceived as being sympathetic toward the State. Horton also stated that he had many friends who were police officers. Holmgren similarly testified that his son-in-law had been murdered approximately 2$^{1}$/$_{2}$ years ago.

We conclude that the trial court was in the best position to consider the State's reasons and to determine whether the prosecutor could have reasonably believed Osiol, Aragosa, Horton, and Holmgren exhibited traits that would make them more desirable jurors than Ms. Winters. We find that no sufficient basis exists to set aside that finding.

## B. Propriety of Sentence

Defendant next argues that the trial court improperly denied

him probation and that we should remand for resentencing. As a threshold matter, we note that defendant failed to preserve this argument in a posttrial motion and we, therefore, deem it forfeited. See *People v. Williams*, 181 Ill. 2d 297, 322 (1998) (finding that an objection at the sentencing hearing and reference to the error in a postsentencing motion are necessary to preserve a sentencing issue for review). Even if we were to apply the plain error doctrine and consider defendant's arguments, we would conclude that they lack merit.

Specifically, defendant attacks his sentence on two bases. First, he argues that the trial court incorrectly assumed that the probation statute applied solely to those situations where a family should be kept together. We find that the record contains no evidence supporting this contention. Defendant supports his claim by pointing to two isolated comments made by the trial court in reference to section 5—5—3(e) of the Unified Code of Corrections (Code of Corrections) (730 ILCS 5/5—5—3(e) (West 1998)). While one could infer from these comments that the trial court misunderstood the probation statute, we find that defendant takes these statements out of context. See *People v. Ward*, 113 Ill. 2d 516, 526-27 (1986) (finding that the reviewing court must consider the record as a whole). Contrary to defendant's assertion, the trial court clearly considered probation and rejected it because it was inappropriate. The court specifically stated that, under the circumstances, probation would "deprecate the serious nature of the offense."

The second basis on which defendant attacks his sentence is that, according to defendant, the trial court expressed hostility toward the legislature's decision to allow probation for criminal sexual assault. This conduct, defendant argues, constituted an abuse of discretion requiring reversal. We disagree.

During trial, the court commented:

"The legislators seem to think[,] and I'm not sure I understand the logic behind this[,] but they seem to think that a person who sexually abuses someone in his own family can get probation whereas someone who sexually abuses a stranger cannot. I don't understand the logic behind that. [It s]eems to me that [sexually abusing] someone in your own family is more aggravating than [sexually abusing] someone you just happen to grab off the street[. T]hat's bad enough but then you abuse someone in your own family[—]it seems to me [that's] worse. But it's the legislature's prerogative. The court will consider [probation]."

Defendant supports his argument by citing *People v. Bolyard*, 61 Ill. 2d 583 (1975). There, the trial court stated:

"There was a time some years back in this court when the then

judges of the court had what amounted to an inflexible policy that any crimes involving physical violence, any crimes involving sexual violence, were simply not probationable, and the lawyers in that day didn't even submit probation requests. The net effect of submitting a probation request at that time was only to increase the sentence of your client. This was a matter that was well understood by the Bar of the Sixth Circuit. In recent years, perhaps that policy has been relaxed somewhat, *although personally I still subscribe to it.*" (Emphasis added.) *Bolyard*, 61 Ill. 2d at 585.

On review, our supreme court found that the trial judge in *Bolyard* "expressed his opinion that perpetrators of such a crime should not receive probation. Under these circumstances we find \*\*\* that the trial judge arbitrarily denied probation because defendant fell within the trial judge's category of disfavored offenders." *Bolydard,* 61 Ill. 2d at 587.

We conclude that the trial court's comments in *Bolyard* differ from those in the instant case. In *Bolyard*, the trial court specifically stated that it would *not* sentence a sexual violence defendant to probation and that such a request would result in an increased penalty. *Bolyard*, 61 Ill. 2d at 585. In contrast, the trial judge here expressed his displeasure with the legislature but nevertheless stated that he would consider probation as per the statute.

The trial court is best suited to determine the most appropriate sentence. *People v. Hicks*, 101 Ill. 2d 366, 375 (1984). A trial court's sentencing decision is entitled to great deference and will not be disturbed absent a showing of abuse of discretion. *People v. Kolzow*, 301 Ill. App. 3d 1, 8 (1998). We find that the trial court's remarks, while ill-advised, do not justify reversal. A trial judge's inclusion of some personal observations does not necessarily rise to an abuse of discretion. See *People v. Steppan*, 105 Ill. 2d 310, 323 (1985). Any additional comments or observations made by the trial judge are generally of no consequence where the record shows the court otherwise considered proper sentencing factors. *People v. Bosley*, 197 Ill. App. 3d 215, 222 (1990). Defendant's sentence was within the appropriate range and is therefore presumably proper. See *People v. Johns*, 285 Ill. App. 3d 849, 856 (1996).

### C. Mitigation Factors

■ Defendant next argues that the trial court made three errors with regard to its consideration of mitigating and aggravating factors. As previously noted, the trial court ordinarily sits in the best position to make a reasoned decision as to the appropriate punishment in each case and, therefore, its determination is entitled to great deference. *Hicks*, 101 Ill. 2d at 375; *Kolzow*, 301 Ill. App. 3d at 8. A reviewing

court must not substitute its judgment for that of a sentencing court merely because it would have weighed mitigating and aggravating factors differently. *People v. Streit*, 142 Ill. 2d 13, 19 (1991). As long as the court does not consider incompetent evidence, improper aggravating factors, or ignore pertinent mitigating factors, it has wide latitude in sentencing a defendant to any term within the statutory range prescribed for the offense. *People v. Hernandez*, 204 Ill. App. 3d 732, 740 (1990). Even reliance on an improper factor in aggravation does not necessarily require remand where such weight is so insignificant that it did not lead to a greater sentence. *People v. Woidtke*, 224 Ill. App. 3d 791, 807 (1992).

■ Defendant first argues that the trial court erred by failing to consider his remorse as a mitigating factor. We disagree.

Illinois courts have indeed determined that a defendant's demonstration of remorse or lack thereof is an important factor that trial court's should consider. *People v. Taylor*, 278 Ill. App. 3d 696, 700 (1996). However, we disagree with defendant's contention that the trial court failed to *consider* remorse. Rather, the trial court *rejected* defendant's assertion of remorse as not credible, stating that "[e]xpress[ing] remorse after someone has been found guilty [is] not quite the same."

Defendant also argues that the trial court erred by considering defendant's age, education, employment, and community service as aggravating, rather than mitigating, factors. Again, we disagree.

The trial court stated:

> "Of anybody who walks through this door, [defendant] ha[d] everything in the world going for him. Most guys come up a lot worse than he [did]. I think it's more aggravating than mitigating.
> \*\*\*
> In many respects I found some of the evidence you presented in mitigation to be somewhat aggravating, because [defendant] didn't have to wind up a child molester."

We cannot conclude that the trial court abused its discretion in finding that defendant's age, education, and background constituted aggravating factors. The court reached a similar result in *People v. Tatum*, 181 Ill. App. 3d 821 (1989). Writing for the majority, Justice Freeman opined:

> "[T]he trial court [did not] abuse its discretion in giving defendant's employment history and educational background less weight than it gave the fact which they revealed, *i.e.*, that defendant did not come from a disadvantaged background. That is, the trial court properly considered that fact as militating in favor of a greater rather than lesser sentence. The trial court could properly have

inferred from defendant's well-paid employment history and his post-secondary education that his offenses were less the result of negative social forces and influences than of personal choice. It thus could have properly concluded that his background revealed less rehabilitative potential than incorrigibility." *Tatum*, 181 Ill. App. 3d at 826.

Defendant next argues that the trial court improperly considered the victim's age as an aggravating factor. Citing *People v. Gonzalez*, 151 Ill. 2d 79, 83 (1992), defendant contends that the trial court improperly relied on a factor implicit in the offense for which defendant was charged. We reject this argument.

First, we must note that it is less than clear that the trial court considered A.S.' age as an aggravating factor. Indeed, the trial judge himself, during defendant's motion for reconsideration, asked defense counsel, "[w]hat made you think I considered it as an aggravating factor? What page are you referring to in the transcript?"

While the trial court indeed noted A.S.' age, our review of the record indicates that it did so merely because it was relevant to the nature of the case. Even if we held otherwise, such a conclusion would not necessarily require reversal. The gist of the trial court's statement was that, while minority status is an essential element under section 12—13(a)(3) of the Criminal Code, it may be somewhat helpful, under certain circumstances, to consider whether the victim is *particularly* young. The Third District examined an analogous issue in *People v. King*, 151 Ill. App. 3d 662 (1987). Writing for the majority, Justice Heiple opined:

"In entering sentence, it is permissible for the judge to consider the nature and circumstances of the offense, including the nature and extent of each element of the offense as committed by the defendant. [Citation.] For instance, *it is not error for a trial judge to consider the extreme youth of the victim as an aggravating factor in sentencing for the offense of cruelty to children.* [Citation.]

In the instant case, the defendant argues that being a family member is an element of his offense. As such, it cannot be used as an aggravating factor. The State contends that *there is a difference between merely being a family member and being a father. We agree.*" (Emphasis added.) *King*, 151 Ill. App. 3d at 663-64

We conclude that, just as there is a difference between merely being a family member and being a father, there is a difference between being under age 18 and being significantly under age 18. For example, while an act of sexual penetration on a 17-year-old family member is reprehensible (and, of course, a violation of section 12—13(a)(3) of the Criminal Code), an act of sexual penetration on a 7-year-old family member is even more reprehensible. Therefore, we find that the trial

court did not err by recognizing that A.S. was particularly young at the time of the offense. We further find that, even if we were to accept defendant's argument on this point, remand would be unnecessary because the defendant's sentence was well within the statutory range and because other aggravating factors still exist. See *People v. White*, 114 Ill. 2d 61, 66 (1986).

## D. Propriety of Trial Court's Comments

Defendant also argues that the trial court waged personal attacks on defendant's religious beliefs, his wife, his witnesses in mitigation, and his defense counsel. These attacks, defendant contends, impinged on his right to a fair sentencing hearing. We disagree.

■ With respect to the trial court's improper comments toward defendant's religious beliefs, his witnesses in mitigation, and his defense counsel, we must note that defendant failed to raise an objection and, therefore, we deem those arguments forfeited. See *Enoch*, 122 Ill. 2d at 186 (holding that an objection is generally necessary to preserve an issue for appeal). We further find that, even if we were to reach the merits of defendant's argument, we would conclude that it lacks merit. The trial court's comments, while possibly ill-advised, do not reach a level necessary for remand.

■ With regard to the trial court's comments toward defendant's wife, we similarly conclude that defendant's argument lacks merit.

During sentencing, defense counsel stated:

"[T]his man has a lot of support with the community[,] *** the church[,] *** and the family, his wife is here today. She's committed to her marriage and [to defendant]."

The court later stated that "what really troubles me even somewhat more than what I already said *** [is that] if [defendant] walked out of jail tonight, he would be in bed with Sybil Thurmond tonight[.] *** [H]er natural niece was abused by her husband and she would take this man home tonight." Defendant properly preserved this issue for review and raised it in his motion to reconsider sentence. The trial court rejected defendant's argument, stating that "[m]y comments toward the man's wife had nothing to do with the sentenc[e] ***. I just basically said it annoyed me. So what. [It] didn't affect [the] sentence ***. [I simply said that] his wife was willing to take the man back into her bed after she was aware that he was having sex with her niece."

We agree with defendant's statement in his brief that "[d]ignity is necessary for judicial proceedings." We further agree that the " 'trial judge should be the exemplar of dignity and impartiality. He should exercise restraint over his conduct and utterances. He should suppress his personal predilections, and control his temper and emotions.' "

*People v. Merz*, 122 Ill. App. 3d 972, 979 (1984), quoting ABA Standards, Function of the Trial Judge § 6.4 (1972). While we, once again, believe that the trial court judge should have exercised more restraint with respect to his comments, we cannot conclude that his remarks, individually or collectively, warrant remand. As noted previously, a trial judge's inclusion of some personal observations does not automatically rise to an abuse of discretion. See *Steppan*, 105 Ill. 2d at 323. Any additional comments or observations made by the trial judge are generally of no consequence where the record indicates that the court otherwise considered proper sentencing factors. *Bosley*, 197 Ill. App. 3d at 222. We find that defendant's sentence was within the appropriate range and is therefore presumably proper. See *Johns*, 285 Ill. App. 3d at 856.

### E. Cumulative Effect of Sentencing Errors

Finally, defendant argues that the cumulative effect of alleged sentencing errors requires that defendant's case be remanded. Because we reject each of defendant's assignments of error, we need not address this issue.

### III. CONCLUSION

For the foregoing reasons, we affirm the circuit court.

Affirmed.

CAMPBELL, P.J., and O'BRIEN, J., concur.