2021 IL App (1st) 192507-U

SIXTH DIVISION
March 12, 2021

No. 1-19-2507

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 14836 |
| | ) | |
| RASAAN PRICE, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Presiding Justice Walker and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where the circuit court's comments on remand raise serious concerns regarding the fairness of the hearing it ultimately conducted, the court's determination that the defendant in this case, who was 15 years old at the time of his crime, should be sentenced as an adult is reversed. Defendant's sentence is vacated, and this case is remanded to another judge for a hearing on the State's petition for sentencing in criminal court that is free from the perception that the circuit court judge's hostility toward this court's mandate played any role in the outcome of that hearing.

¶ 2    Defendant Rasaan Price was charged with first degree murder committed when he was 15 years old. Under the law applicable at that time, the adult criminal court had exclusive jurisdiction over his case. 705 ILCS 405/5-130(1)(a) (West 2014) (excluding individuals 15 years of age or

older who were charged with certain qualifying offenses from the jurisdiction of the juvenile court). Rasaan successfully argued on appeal that his lawyers should have asked for him to be sentenced in juvenile court because an amendment to the excluded jurisdiction statute that took effect after he was found guilty but before he was sentenced raised the minimum age for juveniles subject to its provisions from 15 to 16 years of age. *People v. Price*, 2018 IL App (1st) 161202, ¶¶ 13-16, 25. This court found that, because this amendment was a matter of procedure and therefore presumptively applicable to cases that were still pending, Rasaan's counsel provided ineffective assistance by failing to seek sentencing in juvenile court. On remand, the circuit court was instructed to vacate Rasaan's sentence and make the requisite transfer to juvenile court, subject to the State's right to petition for Rasaan to remain in adult criminal court for sentencing. *Id.* ¶ 30.

¶ 3    With the case before him again, the circuit court judge—clearly offended that we had concluded a public defender in his courtroom had rendered ineffective assistance—took pains to twice state, on the record and in front of Rasaan and his family members, that he strongly disagreed with our holding on direct appeal. On both occasions the judge referenced the Nuremberg trials following World War II—where it was determined that Nazi defendants accused of war crimes could not rely on the defense that they were merely following orders—at one point declaring, "Nuremberg says you don't follow all orders; all right?"

¶ 4    Although the court, in accordance with our mandate, vacated Rasaan's sentence and held a hearing on the State's petition for sentencing in criminal court, Rasaan argues that the circuit court judge's open hostility toward this court's mandate made it impossible for him to receive a fair hearing on the State's petition. He alternatively argues that the circuit court failed to properly consider those factors weighing in favor of a transfer to juvenile court for sentencing. Rasaan asks us either to order that he should have been sentenced in juvenile court, a holding that would result

in his immediate release, or to remand his case to a different judge for a new hearing on the State's petition.

¶ 5     For the reasons that follow, we remand this case for assignment to a new judge and a new hearing on the State's petition.

¶ 6                                                  I. BACKGROUND

¶ 7                                 A. Rasaan's Trial and Initial Sentencing

¶ 8     Rasaan was charged with first degree murder in connection with a shooting that took place on July 23, 2014, when Rasaan was 15 years old. At the time, the Juvenile Court Act of 1987 (Juvenile Court Act or Act) (705 ILC 405/1-1 *et seq.* (West 2014)) provided that cases involving individuals who were 15 years old or older and charged with certain qualifying offenses (including first degree murder) were excluded from the jurisdiction of the juvenile court and automatically tried in criminal court. 730 ILCS 5/130(1)(a) (West 2014). Rasaan was accordingly charged and tried before a jury as an adult in criminal court.

¶ 9     The evidence at trial established that Rasaan fired a revolver through the window of a house, striking the 16-year-old victim, Darren Foggey, Jr., in the neck and killing him. On October 22, 2014, the jury found Rasaan guilty of first degree murder with a firearm. Rasaan's post-trial motions were denied.

¶ 10    In the months between the jury's verdict and sentencing, the legislature enacted Public Act 99-258 (Pub. Act 99-258 (eff. Jan. 1, 2016)), which, among other things, amended section 5-130 of the Juvenile Court Act by raising the minimum age for application of the excluded jurisdiction statute from 15 to 16 years old. 705 ILCS 405/5-130(1)(a) (West Supp. 2015). It also amended the Unified Code of Corrections (Code of Corrections) (730 ILCS 5/1-1-1 *et seq.* (West 2014)) to require consideration of certain mitigating factors when individuals under the age of 18 are

sentenced in criminal court (730 ILCS 5/5-4.5-105(a) (West Supp. 2015)) and made firearm enhancements discretionary, rather than mandatory, for such individuals (730 ILCS 5/5-4.5-105(b) (West Supp. 2015)).

¶ 11     Rasaan's counsel, relying on some of these changes, argued successfully that he should be sentenced with consideration given to the new mitigating factors for juvenile offenders and without a mandatory firearm enhancement. His counsel, however, did not argue that the amendment to section 5-130 raising the minimum age for automatic criminal court jurisdiction for those with qualifying offenses should apply retroactively and did not seek transfer of Rasaan's case to juvenile court for sentencing. Upon hearing the evidence in mitigation and aggravation, including Rasaan's own statement in allocution and the certificates of achievement awarded to him while incarcerated, and after noting the consistent support Rasaan had received from his family throughout his case, the sentencing judge concluded that Rasaan had "an outstanding chance of rehabilitation," declined to impose a firearm enhancement, and on March 25, 2016, sentenced Rasaan to 25 years of imprisonment, a sentence falling on the low end of the range of 20-60 years that Rasaan could have received (730 ILCS 5/5-4.5-20(a) (West 2014)).

¶ 12                                    B. Direct Appeal

¶ 13     Some months after Rasaan was sentenced, our supreme court unanimously confirmed in *People ex rel. Alvarez v. Howard*, 2016 IL 120729, ¶ 28—a case that had been pending for several years in criminal court but had not yet been tried—that the amendment to section 5-130 raising the minimum age for application of the excluded jurisdiction statute to 16 applies retroactively to "pending cases," meaning that the defendant in that case, who had not yet been tried, was transferred to juvenile court for trial. The next year, in *People v. Hunter*, 2017 IL 121306, ¶ 43, the court clarified that "pending cases" meant cases that were still in "trial court proceedings" but

not cases on appeal.

¶ 14     Relying on these authorities, Rasaan argued that because he had not yet been sentenced when the amendment to section 5-130 took effect, he was still in the midst of trial court proceedings and his trial counsel should have sought transfer of his case to juvenile court for sentencing under the Juvenile Court Act. Rasaan claimed that, in failing to do so, his counsel had provided him with ineffective assistance. *Price*, 2018 IL App (1st) 161202, ¶ 12. We agreed. *Id.* ¶ 26. Although we made clear that "trial counsel should not be expected to anticipate every new direction future caselaw will take," we concluded that "where Rasaan's counsel was aware of an amendment to the statute that subjected his young client to the criminal court system, where that amendment concerned a matter of procedure and made no express reference to prospective application, and where there were still trial court proceedings to which the amendment could be applied," his failure to argue that the amendment should be applied to his client was "objectively unreasonable under prevailing professional norms." (Internal quotation marks omitted.) *Id.* ¶¶ 8, 13.

¶ 15     It was also clear to us that the failure to seek retroactive application of the amendment to section 5-130 had prejudiced Rasaan. *Id.* ¶ 25. Had the amendment been applied, the State would have been required to petition for Rasaan to be sentenced in criminal court under the Code of Corrections. *Id.* (citing 705 ILCS 405/5-805(2), (3) (West 2016)). And if the State had been unsuccessful, the maximum sentence Rasaan could have received in juvenile court would have been a five-year term in the Department of Juvenile Justice, with release no later than his 21st birthday. *Id.* ¶ 12.

¶ 16     We remanded with instructions that the sentence be vacated. *Id.* ¶ 31. Both parties recognized that, because Rasaan was over the age of 13 at the time of his offense, the State could

still petition for a discretionary transfer of his case to adult criminal court. 705 ILCS 405/5-805(3)(a) (West 2016). Rasaan asked that he be remanded to juvenile court for a juvenile court judge to consider such a petition. However, we agreed with the State that this was most analogous to the situation in which a juvenile subject to the excluded jurisdiction statute is ultimately found guilty only of crimes that no longer qualify him or her for such treatment, a situation in which the State's petition is considered by the trial court judge under section 5-130(c)(ii) of the Juvenile Court Act. *Price*, 2018 IL App (1st) 161202, ¶ 28. We thus remanded this case back to the trial court judge for consideration of the factors outlined in that section.

¶ 17                                    C. Proceedings on Remand

¶ 18    On April 2, 2019, the State filed its "Petition for Defendant to be Sentenced Pursuant to the Unified Code of Corrections." The assistant state's attorney (ASA) assigned to the case appeared before the judge who had presided over Rasaan's trial and initial sentencing. No defense counsel was present. The court then asked who defense counsel had been at trial, prompting an assistant public defender in the courtroom on another case to offer to contact Rasaan's trial attorney. In the exchange that occurred next—reproduced below—the circuit court judge immediately expressed his disagreement with and disparaged this court's opinion:

"THE COURT: No. Don't you understand? Kevin is trying to be a little subtle. What do they say, ineffective assistance of counsel; right?

MR. DEBONI [ASA]: Yes.

THE COURT: And so you want that spread of record right now?

MR. TERRY [Assistant Public Defender]: No.

THE COURT: Well, why did you ask if you want him brought down here to be shamed?

MR. TERRY: Not shamed. He was the trial attorney. He might be able to—

THE COURT: To what, overrule the Appellate Court?

MR. TERRY: No. Never mind.

THE COURT: It would be a motion to duck on his behalf, but now you're dragging him in; right?

You're here. What do you want to do?

MR. TERRY: Your Honor, I can take a copy of the petition and take it to the chief of the Homicide Task Force and see how she wants to proceed in assigning this case.

THE COURT: They tried homicide bombers too. That didn't work. You've got Murder Task Force. Why would you take a name like that and put it as Homicide Task Force?

Nuremberg says you don't follow all orders; all right? All right. Call them up. Pass the case, and let's get Mr. Price an attorney.

MR. TERRY: Thank you, Judge.

THE COURT: Kevin, I'll—and then they'll just—Regina will let you know the date.

MR. DEBONI: Yeah, I can stick around.

THE COURT: Good. It's always good to have you.

MR. DEBONI: I always enjoyed being before this Court.

THE COURT: Thank you. Even when members of the Public Defender's Office give up their brother attorneys?"

¶ 19    The record indicates that this exchange was witnessed by Rasaan and by those members of his family who were waiting to visit with him that day at the courthouse.

¶ 20     At the hearing that, after several continuances, was held on November 6, 2019, the circuit court began, pursuant to this court's mandate, by vacating Rasaan's 25-year sentence. The circuit court judge asked the ASA—"because we have members of the public here"—to remind everyone of the procedural history of the case and how it had ended up back in the circuit court. The judge then took the opportunity to state that this court's reasoning on direct appeal was "kind of weak, but they're the Appellate Court" and to again express his view that our holding was tantamount to "blam[ing] an attorney for not knowing what the future is." The ASA indicated that he tended to agree, and the hearing continued, with the court interrupting at one point to remind the lawyers to address, one at a time, the factors that the statute requires the court to consider in determining whether sentencing in juvenile court or criminal court is appropriate.

¶ 21     The ASA emphasized that, at the time of the shooting, Rasaan was just four months shy of his sixteenth birthday and had no history of abuse or neglect, mental health problems, or physical or educational concerns. He had, according to the ASA, "a fairly decent upbringing with family members to support him throughout his young life." The ASA urged the judge to give substantial weight to the circumstances of the offense: that Rasaan was the shooter and had not been found guilty merely as an accomplice. The judge interjected at this point to ask if the fact that Rasaan traveled to the victim's home was evidence that the crime had been premeditated. The ASA agreed that it was.

¶ 22     Defense counsel began his argument by asking the court to strike the State's petition as untimely, on the basis that if—as this court had held on direct appeal—defense counsel should have known or discovered that the amendment to section 5-130 of the Act was retroactive, then the State should be charged with having had that same knowledge. In rejecting this argument, the circuit court again took the opportunity to voice his disagreement with this court's reasoning:

"THE COURT: As stated before, the Appellate Court can do what they want, but to say that both Defense and Prosecutors are required to know what future laws are [is] irrational.

MR. BARRETT [Defense Counsel]: I agree.

THE COURT: That's the nicest way I can put that.

MR. BARRETT: I agree with the Court, but based on the ruling of—

THE COURT: But just because they have the power, that doesn't mean it's right. All right? So I still have to look at justice. Norrenberg (phonetic) says I don't follow orders, but go ahead.

MR. BARRET: Yes, Your Honor. We're just asking the Court to consider that motion and the arguments presented within that motion. Secondly—

THE COURT: Well, that's easy. That's denied. Go ahead."

¶ 23   The record again reflects that Rasaan and members of his family who had traveled to court to support him at the hearing were present for these comments.

¶ 24   Addressing the statutory factors, defense counsel argued that it did not matter how close to his 16th birthday Rasaan was at the time of his crime, he was 15 years old and no longer came within the provisions of the excluded jurisdiction statute. Counsel asked the court to consider again the evidence in mitigation it had heard at Rasaan's initial sentencing, including Rasaan's statement in allocution, certificates of achievement awarded to him while incarcerated, the consistent support he had received from his family, and the court's own observation that he had "an outstanding chance of rehabilitation." Counsel argued that Rasaan was not a threat to the public and urged the court to order him resentenced in juvenile court.

¶ 25   The circuit court granted the State's petition for sentencing under the Criminal Code,

stating its reasons as follows:

"THE COURT: All right. I want to compliment both the Prosecution and Defense on the outstanding work they have done so far and what I have seen the outstanding work that they're going to do in the future on this case. But I have to look at the facts in this case. All right? This is only concerning the transfer and not concerning the resentencing. All right? First of all, the offense—one of the factors that has to be considered was the offense committed aggressive and premeditated in a manner [*sic*]. There's maybe an unwritten law or something else that we all assume people should be safe in their house. They should have the ability just to say, I'm home and nothing will happen to me. Our Constitution provides under the Fourth Amendment that people be safe in their homes and that protection is against the government. So I mean, we should expand that a little bit and make sure everybody is safe in their home. So I have to look at that. Then the aggressive nature and premeditation, they moved—Mr. Price and the group moved from one location to another, so they had a destination in mind, they shot—Mr. Price shot through a window and then killed Darren while he was at home, so that part is fulfilled.

Then the other thing is Mr. Price was the one that used the deadly weapon, *i.e.*, the jury came back that he personally discharged a firearm that caused the death of Darren Foggey, and the other factors that I have considered. So right now, I am going to deny— sustain the State's petition and deny the Defense's petition. So Mr. Price will be sentenced as an adult in this courtroom."

¶ 26 The court then asked counsel to move directly to their sentencing arguments. Many of the same points were stressed and defense counsel cited an updated presentence investigation report and mitigation packet, including handwritten notes Rasaan had taken during trial, in which he set

out what he would do to change his life if he were found not guilty. Counsel noted that Rasaan had enrolled in school and was getting As and Bs, attended church in prison, and had "taken advantage of every opportunity available to him to better himself." In allocution, Rasaan apologized to his family and expressed his desire to better himself so that he could be a role model for his younger siblings.

¶ 27    The circuit court then set out the basis for its sentencing decision, specifically addressing the factors set out in *Miller v. Alabama*, 567 U.S. 460 (2012), finding that Rasaan's apologies were "very well taken," that his young age and rehabilitative potential were "the most prominent factors," that he had no criminal background, and that he had "outstanding family support." The court asked Rasaan if, should his sentence be reduced, he would do something with his life, so that his victim's death would not be completely in vain, and Rasaan agreed that he would. The court then sentenced Rasaan to 20 years, the minimum sentence for first degree murder available under the Criminal Code, stating, "I can't express my sadness for what you're going through *** it's terrible" and concluding the hearing by allowing Rasaan one additional visit with his family at the courthouse.

¶ 28                                 II. JURISDICTION

¶ 29    The circuit court granted the State's petition to resentence Rasaan in criminal court and entered a final judgment sentencing him to 20 years in prison on November 6, 2019. Rasaan filed his notice of appeal from the order and judgment the same day. We have jurisdiction over this appeal under Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013) and Rule 606 (eff. July 1, 2017), governing appeals from final judgments in criminal cases.

¶ 30                                 III. ANALYSIS

¶ 31    In this appeal, Rasaan argues that the circuit court judge's comments on the record, and in

particular his statement that "Nuremberg says you don't follow all orders," were clear indications that the judge was resolved not to comply with this court's mandate on remand. The State, though acknowledging that the comments "may have been peculiar," argues that a circuit court judge is entitled to express disagreement with this court's analysis. In the State's view, these "offhand remarks" do not change the fact that the judge did in fact faithfully comply with the mandate by vacating Rasaan's sentence and holding a hearing on the State's petition for Rasaan to be sentenced in criminal court under the Code of Corrections.

¶ 32    The State does not dispute that "[a]n appellate court's determination on an issue is binding on both the trial court on remand and the appellate court on subsequent appeal," and "upon remand the trial court must proceed in accordance with the appellate court's decision." *People v. Colter*, 237 Ill. App. 3d 486, 488 (1992). And we of course recognize that "a trial judge's inclusion of some personal observations does not automatically rise to an abuse of discretion." *People v. Thurmond*, 317 Ill. App. 3d 1133, 1146 (2000). As our supreme court has noted, however, "[w]hile restrained and reasoned disagreement with the ruling of a superior court is not to be discouraged," and in fact "may well be constructive in a proper setting, *** dignity is necessary for judicial proceedings." *People v. Urdiales*, 225 Ill. 2d 354, 421 (2007).

¶ 33    The circuit court judge in this case went beyond restrained and reasoned disagreement with this court's opinion in a constructive and proper setting. Instead, he used the proceedings on remand as a platform to express his disdain for the mandate while directly implying that he need not and indeed should not follow it. The court made these statements not only when the case was first remanded to him but also several months later, at the November 6, 2019, hearing, in the presence of Rasaan and his family, who undoubtedly were hopeful that this hard-won proceeding might conclude in his favor. The atmosphere of fairness and impartiality that should have

permeated this proceeding, the "dignity" the *Urdiales* court spoke of, was undermined by comparisons that should have played no role in court that day. The decision to grant or deny the State's petition was a critical one for Rasaan and his family and they had every right to believe that it would be made fairly and impartially.

¶ 34    The State draws our attention to those portions of the record showing that the judge in this case "treated [Rasaan] with kindness and respect throughout all of the proceedings, *** repeatedly commended him for taking strides to improve himself," and routinely allowed him visits with his family members at the courthouse. We agree that the trial judge is to be commended for these actions. At issue here, however, is not whether the judge treated Rasaan himself with dignity in their personal interactions, but whether his comments called into question whether he would follow the mandate of this court and make the requisite judicial decision impartially and fairly.

¶ 35    The cases that the State relies on are different. While the judges in those cases clearly expressed disagreement with or even disparaged decisions of the appellate court, the trial court judges did not suggest, through reference to Nazi Germany or otherwise, that they need not or would not follow the mandate of the higher court. In *People v. Hooper*, 133 Ill. 2d 469, 513-14 (1989), our supreme court concluded that "at the time he made the statements, the judge had not yet made any decision on the merits of the question before him." *Id.* at 514. And in *People v. Nelson*, 206 Ill. App. 3d 956, 967 (1991), we concluded that the circuit court "never suggested that it would not follow the law" that it disagreed with. Here, the trial judge did exactly that—twice—the second time directly before he was called on to make the critical judicial decision.

¶ 36    Under Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), we may, in our discretion, direct that this case be reassigned to a new judge on remand. *People v. Serrano*, 2016 IL App (1st) 133493, ¶ 45. We exercise that discretion now. In our earlier decision, we held that the factors set

out in section 5-130(c)(ii) of the Juvenile Court Act (705 ILCS 405/5-130(c)(ii) (West 2018)—which a court is directed to consider when a juvenile offender charged with a crime that excludes him or her from juvenile court jurisdiction is ultimately found guilty of a lesser *crime* that no longer qualifies him or her for such treatment—are the factors that the legislature would have a court consider in these analogous circumstances, where a defendant no longer meets the requirements of the excluded jurisdiction statute because of his age at the time of the offense. *Price*, 2018 IL App (1st) 161202, ¶ 28.

¶ 37    If the newly assigned judge applies these factors and denies the State's petition, it is our understanding that Rasaan, who is now 22 years old, will have already served the maximum sentence permitted under the Juvenile Court Act and must be released. See 705 ILCS 405/5-750 (West 2020). If the newly assigned judge grants the State's petition, it is our understanding that a new sentencing hearing will likely not be required, as the minimum sentence available under the Code of Corrections has already been imposed and, absent some new misconduct on Rasaan's part, that sentence may not be increased on remand. See 730 ILCS 5/5-5-4 (West 2020) (providing that a higher sentence on remand is only warranted where it is "based upon conduct on the part of the defendant occurring after the original sentencing").

¶ 38                              IV. CONCLUSION

¶ 39    For the above reasons, we reverse the circuit court's order granting the State's petition for Rasaan to be resentenced under the Code of Corrections and remand this case to the presiding judge of the criminal division of the circuit court with instructions to assign the case to a different judge to preside over a new hearing on the State's petition.

¶ 40    Reversed and remanded with directions.