THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SHUN MIMMS, Defendant-Appellant.

First District (6th Division)    No. 1—98—1317

Opinion filed February 25, 2000.

DePaul Legal Clinic, of Chicago (Howard M. Rubin and Margaret H. Domin, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, James Fitzgerald, and Margaret Blade, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'BRIEN delivered the opinion of the court:

Following a bench trial, defendant, Shun Mimms, was convicted of the first degree murder of Candace Richardson and sentenced to 45 years in prison. On appeal, defendant argues: (1) the State failed to prove him guilty of first degree murder beyond a reasonable doubt; (2) the trial court should have convicted him of involuntary manslaughter instead of first degree murder; (3) the trial court erred during sentencing when it considered more than one victim impact statement in aggravation; and (4) the trial court abused its discretion by sentencing him to 45 years' imprisonment. We affirm.

Ronnie and Linda Phillips testified that at about 3 a.m. on January 15, 1995, they were visited at their house by Antwan Jones (Jones), Gregory Johnson (Johnson), and defendant. Jones told Ronnie that they were looking for Linda's cousin, Andrew, because Andrew owed them $300. Ronnie replied that Andrew was at his brother's house. Johnson asked for phone numbers where Andrew could be reached. Linda gave him the phone numbers of Andrew's parents. Jones then

stated that Ronnie and Linda had until 2 p.m. to come up with the $300, otherwise their house would be "lit up." Jones, Johnson, and defendant left the house.

After they left, Ronnie went into the kitchen, Linda went into the bedroom, and Linda's two daughters, Lanitre and Candace, went into the front living room. Lanitre testified that two or three minutes later, as she was turning out the lights and closing the curtains, she looked out a window and saw defendant running toward the house. She saw defendant stop and aim a weapon at the front of the house. Lanitre hollered at Candace to "get down" and then Lanitre dove toward the floor.

Ronnie testified that when he heard Lanitre yell, he walked out of the kitchen. As he approached the kitchen door, he saw Candace running toward him. Ronnie heard a gunshot and then Candace fell in front of him. The shot had come from the front of the house through the living room window. Ronnie looked out the front windows and saw defendant standing in the street, aiming a gun toward the house. Defendant fired a second shot, then Ronnie fell to the floor next to Candace. At that point, Ronnie noticed that Candace had been hit by one of the bullets. Ronnie got up and called for an ambulance. The ambulance came four or five minutes later. The paramedics pronounced Candace dead at the scene.

Two days later, Lanitre and Robbie identified defendant's photograph in a mug book. In February 1997, they picked him out of a lineup.

The trial court convicted defendant of first degree murder under section 9—1(a)(2) of the Criminal Code of 1961 (hereinafter Code) (720 ILCS 5/9—1(a)(2) (West 1996)) and sentenced him to 45 years in prison. Defendant filed this timely appeal.

■ First, defendant argues that the State failed to prove him guilty beyond a reasonable doubt. When presented with a challenge to the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Further, a single witness' identification of defendant is sufficient to sustain his conviction if the witness viewed defendant under circumstances permitting a positive identification. *People v. Slim*, 127 Ill. 2d 302, 307 (1989). The circumstances to be considered in evaluating an identification include: (1) the opportunity the witness had to view defendant at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of defendant; (4) the level of certainty demonstrated by the witness at the

identification confrontation; and (5) the length of time between the crime and the identification confrontation. *Slim*, 127 Ill. 2d at 307-08.

In the present case, Lanitre and Ronnie identified defendant as the killer. Defendant argues that their identification is suspect because the shooter was too far away to be clearly seen, especially at 3 in the morning, when it was still dark outside. However, Lanitre's and Ronnie's testimony established that when defendant stopped and raised his weapon, he was only about 12 to 15 feet away from Lanitre and approximately 30 feet away from Ronnie. Further, the sidewalk was lit by streetlights, allowing Ronnie and Lanitre to get a look at defendant.

Defendant argues that Lanitre viewed the shooter out a side window of the house and thus did not get a direct look at his face. Defendant also argues that Ronnie did not get a good look at the shooter's face because Candace was in Ronnie's line of sight and thus blocked his view out the window. However, there is no evidence supporting defendant's arguments. Lanitre testified that she looked out the window and saw defendant aim his weapon at the house. There was no testimony that the angle of the window was such that Lanitre could not see defendant's face. Further, Ronnie testified that he looked out the window and saw defendant *after* Candace fell to the ground and was out of his line of sight.

Defendant argues that the curtain over the side window prevented Lanitre from getting a good look at the shooter. No evidence supports defendant's argument. Lanitre testified that the curtains were sheer and that she was able to see through them.

Defendant argues that Lanitre's "hysteria" and Ronnie's "trauma" in the immediate aftermath of the shooting marred their ability to identify the shooter. However, while Lanitre testified that she was frightened by the sight of defendant standing outside her house with a weapon, she never testified that she was made "hysterical" thereby. Nor was there any evidence that Lanitre's fright prevented her from looking out the window and positively identifying the shooter. Further, Ronnie never testified that he was "traumatized" by the shooting such that he was unable to look out the window and identify the shooter.

Defendant argues that Lanitre's and Ronnie's identification of his photograph in the mug book is suspect because his photograph was the only one of a person wearing a hat. In effect, defendant is arguing that the identification was the result of suggestive procedures. Defendant waived this argument by failing to file a motion to suppress the identification. *People v. Brooks*, 187 Ill. 2d 91, 125 (1999).

Defendant argues that reasonable doubt of his guilt exists because

Ronnie initially identified Gregory Johnson as the shooter to police immediately after the shooting. We disagree. Ronnie described the shooter as a tall, light-skinned, male black, a description that matches defendant.

■ In sum, Lanitre and Ronnie viewed defendant at the time of the crime. Two days later, they identified his photograph in a mug book. Two years later, they separately picked him out of a lineup. At trial, they both identified defendant as the shooter. Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime of first degree murder beyond a reasonable doubt.

■ Next, defendant argues the trial court erred by convicting him of first degree murder instead of involuntary manslaughter. The trial court convicted defendant of first degree murder under section 9—1(a)(2) of the Code, which provides:

> "A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death:
>
> ***
>
> (2) he knows that such acts create a strong probability of death or great bodily harm to that individual or another." 720 ILCS 5/9—1(a)(2) (West 1996).

Section 9—3 of the Code provides:

> "A person who unintentionally kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly ***." 720 ILCS 5/9—3(a) (West 1996).

Defendant argues that his shooting into an occupied house was an act of recklessness for which he should have been convicted of involuntary manslaughter. *People v. Lake*, 298 Ill. App. 3d 50 (1998), is on point. In *Lake*, defendant Lemont Lake became angry when he learned that Orlando Potts had broken some windows in Tineshea Lake's house. *Lake*, 298 Ill. App. 3d at 52-53. Defendant retrieved a gun and he and four other male companions walked toward Orlando's apartment. *Lake*, 298 Ill. App. 3d at 52-53. When they were about 30 feet away from the apartment, defendant told the group to stop, pulled out the gun and aimed it at the apartment. *Lake*, 298 Ill. App. 3d at 53. Defendant fired 16 shots at the apartment, one of which killed 14-year-old Alvin Gilmore, who was sitting at the kitchen table near a window. *Lake*, 298 Ill. App. 3d at 53. One of defendant's companions testified that he saw people in the apartment before defendant began shooting. *Lake*, 298 Ill. App. 3d at 53.

Defendant was convicted of first degree murder. *Lake*, 298 Ill. App. 3d at 53. On appeal, he argued for reversal based on his trial counsel's failure to tender a jury instruction defining "recklessness." *Lake*, 298 Ill. App. 3d at 54. The appellate court found no reversible error, holding that intentionally firing a weapon at an occupied building is an act having a natural tendency to cause death or great bodily harm and is of such a character as to defeat any assertion of recklessness. *Lake*, 298 Ill. App. 3d at 54.

In the present case, Lanitre's and Ronnie's testimony established that defendant fired his weapon at their house. Ronnie's testimony established that defendant knew the house was occupied, since the shooting took place only minutes after defendant had been inside the house with Ronnie and his family. One of defendant's shots hit Candace in the head, killing her. Defendant is presumed to know that his firing a gun at an occupied home "create[d] a strong probability of death or great bodily harm" to the occupants of that home, which included the victim, Candace. 720 ILCS 5/9—1(a)(2) (West 1996); *Lake*, 298 Ill. App. 3d at 54. Accordingly, the trial court correctly convicted him of first degree murder.

■ Next, defendant argues the trial court violated the Rights of Crime Victims and Witnesses Act (hereinafter Act) (725 ILCS 120/1 *et seq.* (West 1996)) when it considered more than one victim impact statement during sentencing. Defendant waived this issue by failing to object or raise the issue in his postsentencing motion. *People v. Gonzales*, 285 Ill. App. 3d 102, 104 (1996). Even if the issue had not been waived, we would find no reversible error, as the Act provides, "Nothing in this Act shall create a basis for vacating a conviction or a ground for appellate relief in any criminal case." 725 ILCS 120/9 (West 1996). Accord *People v. Benford*, 295 Ill. App. 3d 695, 700 (1998).

■ Finally, defendant argues that the trial court abused its discretion in sentencing him to 45 years in prison. Defendant waived this issue by failing to raise it in a postsentencing motion. *People v. Reed*, 177 Ill. 2d 389 (1997). Even if the issue had not been waived, we would find no reversible error. The State argued in aggravation that a lengthy sentence was necessary to deter others from committing the same crime. Defense counsel argued in mitigation that defendant was a young man with a limited criminal background who was remorseful for killing Candace. The trial court stated that it had examined the presentence report and the statutory factors in mitigation, and it sentenced defendant to 45 years in prison. Defendant's 45-year sentence was within the statutory guidelines for first degree murder and not an abuse of discretion.

For the foregoing reasons, we affirm the trial court. As part of our judgment, we assess defendant $150 as costs for this appeal.

Affirmed.

ZWICK, P.J., and CAMPBELL, J. concur.