# Illinois Official Reports

## Appellate Court

---

**People v. Raney, 2014 IL App (4th) 130551**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHRISTOPHER D. RANEY, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-13-0551 |
| Filed | April 4, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for aggravated battery, domestic battery, violation of an order of protection, and criminal trespass to a residence, defendant's convictions and sentences were upheld over his arguments that his prior conviction for felony domestic battery was improperly admitted for impeachment, his sentence was enhanced on the basis of the victim's age, which is an inherent factor of aggravated battery of a senior citizen, that the victim impact statement of his ex-wife's son was improperly considered at sentencing, and that his posttrial claims of ineffective assistance of counsel were not considered by the trial court; however, the cause was remanded for an informal *Krankel* inquiry into defendant's claims of ineffective assistance of counsel. |
| Decision Under Review | Appeal from the Circuit Court of Piatt County, No. 11-CF-30; the Hon. John P. Shonkwiler and the Hon. Chris E. Freese, Judges, presiding. |
| Judgment | Affirmed in part and remanded in part with directions. |

Counsel on        Michael J. Pelletier, Karen Munoz, and Amber Corrigan, all of State
Appeal            Appellate Defender's Office, of Springfield, for appellant.

                  Dana Rhoades, State's Attorney, of Monticello (Patrick Delfino,
                  David J. Robinson, and James C. Majors, all of State's Attorneys
                  Appellate Prosecutor's Office, of counsel), for the People.

Panel             JUSTICE POPE delivered the judgment of the court, with opinion.
                  Justices Knecht and Holder White concurred in the judgment and
                  opinion.


**OPINION**

¶ 1        The State charged defendant, Christopher D. Raney, with aggravated battery (720 ILCS 5/12-3.05(d)(1) (West 2010)), domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2010)), unlawful violation of an order of protection (720 ILCS 5/12-30(a)(1)(i) (West 2010)), and criminal trespass to a residence (720 ILCS 5/19-4(a)(1) (West 2010)). The jury found defendant guilty of all four counts. The trial court sentenced defendant to 5 years in prison on count I and 364 days in prison on both counts III and IV, all terms to be served concurrently.

¶ 2        Defendant appeals, arguing the trial court (1) erred by allowing the State to introduce his prior conviction for felony domestic battery to impeach his testimony, (2) improperly enhanced his sentence based on factors inherent in the offense of aggravated battery, (3) erred by considering his ex-wife's son's victim impact statement at sentencing, and (4) failed to inquire into defendant's posttrial claims of ineffective assistance of counsel. We affirm in part and remand in part with directions.


¶ 3                                I. BACKGROUND

¶ 4        In July 2011, the State charged defendant with aggravated battery (720 ILCS 5/12-3.05(d)(1) (West 2010)) (count I), alleging on July 20, 2011, defendant knowingly caused bodily harm to a person 60 years of age or older; felony domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2010)) (count II), alleging in the same incident, defendant knowingly caused harm to a family member and had a prior conviction for domestic battery; unlawful violation of an order of protection (720 ILCS 5/12-30(a)(1)(i) (West 2010)) (count III), alleging defendant knowingly drove his motor vehicle into the driveway of his ex-wife's residence; and criminal trespass to a residence (720 ILCS 5/19-4(a)(1) (West 2010)) (count IV), alleging defendant knowingly and without authority entered his father and stepmother's residence.

¶ 5        Before trial, defendant filed a motion *in limine* to preclude the State from introducing defendant's two prior felony convictions for domestic battery in 1996 and 2006. The State

conceded the 1996 conviction was too old to be used for impeachment and argued the 2006 conviction could be used to impeach defendant's credibility as a witness should he testify. The trial court allowed the State to use the 2006 conviction for impeachment.

¶ 6        The following is a summary of relevant information from defendant's January 3, 2012, jury trial. Carol S., defendant's ex-wife, testified she obtained an order of protection against defendant on June 28, 2010, effective until June 28, 2012. The order required defendant to stay at least 300 feet from Carol's residence in Mansfield, Illinois.

¶ 7        Carol's 19-year-old son, Matthew, testified he lived with his mother in Mansfield. In the early morning hours of July 20, 2011, Matthew was in the garage with two friends when he saw a vehicle pull into the driveway, stay for about a minute, and pull into the neighbor's driveway for approximately five minutes before leaving. Matthew recognized the vehicle as defendant's gold Ford Explorer with gray trim and the personalized license plate, CRaney2. Matthew called the Piatt County sheriff's department. A deputy came to the residence for about five minutes and then left for about two hours. When the deputy returned he took Matthew and his friends to a grain elevator, where Matthew identified the vehicle as the car that drove into the driveway.

¶ 8        William Raney, defendant's father, testified he recently turned 80 years old. William testified on July 20, 2011, between 2 and 2:30 a.m., defendant was intoxicated and came to his home. William told defendant to go home but defendant would not leave. Defendant grabbed both his father's arms and broke the skin on William's right arm.

¶ 9        Sandra Raney, defendant's stepmother, testified in the afternoon of July 20, 2011, she saw defendant and told him he could come to the home later that evening. Defendant had not been drinking at that time. Sandra woke up at 3 a.m. and heard defendant and his father arguing loudly. Defendant appeared drunk and defendant was not welcome at their home when drunk. Sandra witnessed William telling defendant to leave and defendant refusing to leave and went back to her room to change her clothes. When Sandra returned, William showed her a mark on his arm where "the skin was tore off" and "said [defendant] had done it." Her husband's skin was easily abraded because he had been on "chemo and radiation." A neighbor called the sheriff's department. A police officer arrived and took defendant away.

¶ 10        Deputy Chad Lauden testified he was working for the Piatt County sheriff's department on July 20, 2011. Lauden responded to Matthew's call. After talking to Matthew, Lauden concluded a possible violation of an order of protection had occurred and began looking for the vehicle described by Matthew. Lauden then received another call from dispatch regarding a domestic disturbance. Lauden responded and observed defendant and his father on the front porch of William's home. Lauden heard both William and Sandra tell defendant to leave but defendant refused to leave. Lauden asked William and Sandra to go inside for their safety and repeatedly asked defendant to come into the street. Defendant refused and opened the door to his father's home, attempting to step into the front door. Lauden placed defendant under arrest. Lauden observed William's injuries, "two fresh wounds where the skin was partially peeled back by what appeared to be fingernails." Lauden took photographs of the injuries, which were admitted as exhibits.

¶ 11        Lauden returned to Matthew and Carol's home and asked Matthew and his two friends to follow him to the grain elevator. All three separately identified the vehicle parked there as the vehicle that pulled into the driveway. Lauden determined the vehicle was registered to defendant. The State rested its case.

¶ 12    Defendant testified on the night of the incident he drank alcohol for the first time in two years. Defendant was crying and upset because he missed his six-year-old son Nicholas, who lives with his ex-wife, Carol. Defendant stated he was driving to his father's home and, on the way, pulled into his ex-wife's driveway. Defendant knew the order of protection prohibited him from going to his ex-wife's home. Defendant left his ex-wife's residence and drove to the grain elevator, located about half a block away from his father's home, where he parked and "started slamming Tequila." Defendant then went to his father's house carrying the half-empty bottle of tequila.

¶ 13    When defendant arrived at William's house, his father told him to leave, but defendant responded he could not because he was drunk. Defendant reached for his father "to give him a hug, and he said 'get off of me,' because he's not the hugging type." After defendant's father pulled away, defendant noticed a piece of skin was torn from his father's wrist. Defendant explained his watch might have pulled his father's skin and that he never intended to injure William.

¶ 14    The State then read to the jury, "in 2006 in Piatt County, [defendant] was convicted of domestic battery in this county." The trial court then stated, "evidence of a defendant's previous conviction of an offense may be considered by you only as it may [a]ffect his believability as a witness, and must not be considered by you as evidence of his guilt of the offense with which he is charged." The jury found defendant guilty on all counts.

¶ 15    Defendant was appointed new counsel for his sentencing hearing, which was scheduled for February 23, 2012. Defendant appeared late to the sentencing hearing, which was rescheduled. Defendant did not appear at the rescheduled hearing and the court issued an arrest warrant.

¶ 16    On March 8, 2012, the State petitioned to modify the warrant so defendant would be held without bond pending sentencing. The State claimed defendant called his ex-wife at her work and threatened her, saying, "oh, be worried." Rather than holding defendant without bond, the court set bond at $1 million. On April 5, 2012, defendant appeared in custody at the sentencing hearing and moved to continue to contact witnesses on his behalf. The court told defense counsel to "help [defendant] subpoena what witnesses he wants and make sure they are there" so the case could be completed. At this hearing, the State asked the court not to sentence defendant on count II (domestic battery) because count I (aggravated battery) related to the same act.

¶ 17    On May 3, 2012, the trial court held the sentencing hearing and defendant argued his motion for a new trial, contending the court erred in allowing the State to impeach defendant with his prior conviction for domestic battery. The court denied the motion and proceeded to sentencing. The presentence investigation report (PSI) included only defendant's criminal history and victim impact statements, as defendant did not attend any of the three appointments the probation officer had scheduled for him. Defendant had a long list of prior convictions, many for battery and domestic battery. The State presented victim impact statements from defendant's ex-wife, who read her statement at the hearing, and Matthew. The State asked the court to sentence defendant to the maximum, 5 years on count I and 364 days on counts III and IV.

¶ 18    Counsel for defendant argued his father's injuries were minor, as William did not require any medical care, and noted defendant was a capable worker who wanted to support his young son. Defendant's aunt submitted a letter on his behalf. Defendant made a statement to the court but presented no witnesses. Counsel argued for the maximum (1 year) on counts III and IV and

probation with 180 days in jail on the aggravated battery. Alternatively, counsel suggested three to four years in prison, rather than the five years recommended by the State.

¶ 19 The trial court read defendant's lengthy criminal record. Then the court read Matthew's victim impact statement, detailing how past abuse by defendant had affected him. The court found defendant's conduct caused serious harm to his father, defendant was not provoked, and defendant was likely to commit another crime and unlikely to comply with the terms of probation. The court sentenced defendant to the maximum, 5 years in prison on count I and 364 days on counts III and IV, all terms to be served concurrently.

¶ 20 Defendant filed a *pro se* motion to reduce his sentence, arguing his attorney refused to subpoena witnesses on his behalf for the sentencing hearing, the trial court improperly considered victim impact statements from nonvictims, and the PSI was "full of lies." In August 2012, the trial court held a hearing on defendant's motion before a new judge, Chris E. Freese. Defendant's counsel at sentencing was appointed to represent him. Defense counsel adopted the *pro se* motion without amendment and argued it represented a further statement in allocution but did not address defendant's claim counsel refused to subpoena witnesses. The court denied defendant's motion. This appeal followed.

¶ 21                                    II. ANALYSIS

¶ 22 Defendant argues the trial court (1) erred by allowing the State to introduce his prior conviction for felony domestic battery for impeachment, (2) improperly enhanced his sentence based on factors inherent in the offense of aggravated battery, (3) erred by considering his ex-wife's son's victim impact statement, and (4) failed to inquire into defendant's posttrial claims of ineffective assistance of counsel at sentencing. We address each argument in turn.

¶ 23                         A. The State's Use of Defendant's Prior
                             Conviction for Impeachment Purposes

¶ 24 Evidence of past convictions is "generally inadmissible to demonstrate propensity to commit the charged crime." *People v. Donoho*, 204 Ill. 2d 159, 170, 788 N.E.2d 707, 714 (2003). However, a defendant who testifies may be impeached by proof of a prior conviction. *People v. Tribett*, 98 Ill. App. 3d 663, 675, 424 N.E.2d 688, 697 (1981). The supreme court in *People v. Montgomery*, 47 Ill. 2d 510, 516, 268 N.E.2d 695, 698 (1971), held a witness's prior conviction is admissible to impeach the witness's credibility when (1) the prior crime "was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or *** involved dishonesty or false statement regardless of the punishment" (internal quotation marks omitted); (2) less than 10 years have elapsed since the prior conviction or the date the witness was released from confinement, whichever is later; and (3) the judge determines the probative value of the evidence of the prior crime outweighs the danger of unfair prejudice.

¶ 25 The third element of the *Montgomery* test requires the trial court to conduct a balancing testing, considering the following factors:

> "(1) whether the prior conviction is veracity related; (2) the recency of the prior conviction; (3) the witness' age and other circumstances surrounding the prior conviction; (4) the length of the witness' criminal record and his conduct subsequent to the prior conviction; (5) the similarity of the prior offense to the instant offense, thus

increasing the danger of prejudice; (6) the need for the witness' testimony and the likelihood he would forego his opportunity to testify; and (7) the importance of the witness' credibility in determining the truth." *People v. Robinson*, 299 Ill. App. 3d 426, 441, 701 N.E.2d 231, 243-44 (1998).

In applying these factors, "the trial court is given wide latitude in determining whether the probative value of a prior conviction outweighs any unfair prejudice to defendant." *Tribett*, 98 Ill. App. 3d at 675, 424 N.E.2d at 697. We apply an abuse-of-discretion standard of review to a trial court's decision to admit evidence of prior convictions for impeachment purposes. *Montgomery*, 47 Ill. 2d at 517-18, 268 N.E.2d at 699.

¶ 26 As to defendant's 2006 domestic battery conviction, it is uncontested defendant was released from confinement within the past 10 years and the offense was punishable by more than a year in prison. Consequently, the only remaining issue is whether the probative value of the conviction outweighed its prejudicial nature.

¶ 27 Defendant argues against a mechanical application of the *Montgomery* balancing test, citing *People v. Williams*, 161 Ill. 2d 1, 641 N.E.2d 296 (1994) (*Williams I*). In *Williams I*, the supreme court cautioned against a trend revealing "a regression toward allowing the State to introduce evidence of virtually all types of felony convictions for the purported reason of impeaching a testifying defendant." *Id.* at 38-39, 641 N.E.2d at 311-12. In a later decision, the supreme court clarified *Williams I*, and "emphasized the importance of conducting the balancing test of probative value versus unfair prejudice before admitting prior convictions for impeachment purposes" but did "not alter the three-prong rule set forth in *Montgomery.*" *People v. Williams*, 173 Ill. 2d 48, 81-83, 670 N.E.2d 638, 654-55 (1996) (*Williams II*) (holding the trial court did not err in admitting defendant's previous conviction for aggravated battery to impeach his testimony when the record demonstrated the trial court was "fully aware of the *Montgomery* standard and the balancing test it requires").

¶ 28 In this case, like *Williams II*, the trial court stated it was applying the *Montgomery* standard and concluded the prior conviction's probative value outweighed the potential prejudice. Specifically, the court stated:

"The court believes it does involve dishonesty regardless of the punishment. Also, the court has to balance the possibility of prejudice against the defendant, with the possibility of the accused to appear as a witness of a blameless life."

This case is distinguishable from *Williams I*, as the trial court in *Williams I* admitted evidence of defendant's prior conviction to show defendant's propensity to commit crimes. *Williams I*, 161 Ill. 2d at 40, 641 N.E.2d at 312. Further, the court here also read a limiting instruction to the jury, instructing it "evidence of a defendant's prior conviction *** may be considered by you only as it may [a]ffect his believability as a witness, and must not be considered by you as evidence of his guilt of the offense with which he is charged."

¶ 29 Defendant also cites *People v. Wright*, 51 Ill. App. 3d 461, 463, 366 N.E.2d 1058, 1060 (1977), for the proposition that "aggravated battery has no bearing whatsoever on honesty and veracity," and argues his felony domestic battery conviction had no probative value as to his honesty as a witness but was highly prejudicial. In more recent cases, however, courts have adopted the reasoning of the specially concurring and dissenting opinions in *Wright*, "that evidence of convictions and felonies not directly related to dishonesty are not completely lacking in probative value for impeachment." *People v. Guthrie*, 60 Ill. App. 3d 293, 298, 376 N.E.2d 425, 428 (1978) (citing *Wright*, 51 Ill. App. 3d at 465-66, 366 N.E.2d at 1062-63

(Reardon, J., specially concurring, and Kunce, J., dissenting)); see also *People v. Davis*, 193 Ill. App. 3d 1001, 1007, 550 N.E.2d 677, 680 (1990). In *Wright*, the record reflected the trial court admitted defendant's prior convictions to show the defendant's propensity to engage in violent crimes. *Wright*, 51 Ill. App. 3d at 466, 366 N.E.2d at 1062 (Reardon, J., specially concurring). On that basis, *Wright* is distinguishable because here, as we have noted, the trial court applied the *Montgomery* balancing test.

¶ 30    Further, recent opinions have allowed a conviction for aggravated battery to impeach the defendant's believability when the trial court performs the *Montgomery* balancing test and admits the evidence for impeachment. See *Davis*, 193 Ill. App. 3d at 1007, 550 N.E.2d at 680-81 (upholding admission of evidence of two prior convictions for aggravated battery in an aggravated battery case); see also *Williams II*, 173 Ill. 2d at 83, 670 N.E.2d at 655 (upholding ruling allowing the State to impeach defendant with a prior aggravated battery conviction in a murder case). As the record demonstrates, the trial court fully understood and applied the *Montgomery* standard here.

¶ 31    Defendant also argues his 2006 conviction was highly prejudicial because it involved a crime similar to the crime with which he was charged. However, "[c]ase law is clear that a prior conviction for a crime which is similar to the crime now charged does not mean it cannot be introduced." *People v. Hall*, 117 Ill. App. 3d 788, 799, 453 N.E.2d 1327, 1337 (1983); see, *e.g.*, *Tribett*, 98 Ill. App. 3d at 676, 424 N.E.2d at 697; *People v. Fleming*, 91 Ill. App. 3d 99, 109, 413 N.E.2d 1330, 1337 (1980). "Instead, similarity is a factor which the court must consider when balancing the probative value against prejudicial impact." *Davis*, 193 Ill. App. 3d at 1006, 550 N.E.2d at 680. Defense counsel here advised the trial court the 2006 crime was the same crime for which defendant was on trial here and explained the similarity increased the danger of prejudice. The court appropriately considered this fact and concluded the probative value outweighed the potential for prejudice. The trial court's conclusion was not an abuse of discretion.

¶ 32                    B. The Court's Statements Regarding a Victim's Age at Sentencing

¶ 33    Defendant also argues the trial court improperly used the fact a victim in this case was 80 years old as an aggravating factor for sentencing where defendant's father's age was also an element of the offense. Defendant notes his postsentencing motion did not address this argument but argues we should address the issue under the plain-error doctrine. The State does not address whether defendant forfeited this argument. It is well established forfeiture of an issue is a limitation on the parties and not on this court. *People v. Inman*, 2014 IL App (5th) 120097, ¶ 11; *People v. Carter*, 208 Ill. 2d 309, 318, 802 N.E.2d 1185, 1190 (2003). "This court may overlook forfeiture when necessary to obtain a just result." *Curtis v. Lofy*, 394 Ill. App. 3d 170, 188, 914 N.E.2d 248, 263 (2009). Consequently, we have considered this issue and conclude the trial court did not improperly consider William's age as an aggravating factor where it was also an element of the offense.

¶ 34    " '[D]ouble enhancement' refers to the use of a single factor that is implicit in the offense for which the defendant was convicted as an aggravating factor in sentencing for that offense." *People v. Dixon*, 359 Ill. App. 3d 938, 945, 835 N.E.2d 925, 932 (2005). Generally, double enhancement is prohibited because courts assume "that, in designating the appropriate range of punishment for a criminal offense, the legislature necessarily considered the factors inherent in

- 7 -

the offense." *People v. Phelps*, 211 Ill. 2d 1, 12, 809 N.E.2d 1214, 1220 (2004). As double enhancement is a rule of statutory construction, the standard of review is *de novo*. *Id.*

¶ 35    At sentencing, the trial court considers many relevant factors, such as " ' "the nature and circumstances of the offense, including the nature and extent of each element of the offense as committed by the defendant." ' " *People v. Saldivar*, 113 Ill. 2d 256, 268-69, 497 N.E.2d 1138, 1143 (1986) (quoting *People v. Hunter*, 101 Ill. App. 3d 692, 694 (1981), quoting *People v. Tolliver*, 98 Ill. App. 3d 116, 117-18, 424 N.E.2d 44, 45 (1981)). The court also properly considers the degree of harm caused to the victim, even in cases where serious bodily harm is arguably an implicit element of the offense. *Id.* at 269, 497 N.E.2d at 1143. In cases where the victim's age is an element of the offense, the court does not err simply by mentioning the victim's age at sentencing, as it is relevant to the nature of the case. *People v. Thurmond*, 317 Ill. App. 3d 1133, 1144, 741 N.E.2d 291, 301 (2000).

¶ 36    As defendant was convicted of aggravated battery under section 12-3.05(d)(1) (720 ILCS 5/12-3.05(d)(1) (West 2010)) for committing battery on a person 60 years of age or older, the victim's age was an element of the crime but also part of the nature of the offense. Like *Thurmond*, the trial court's two references to the victim's age before pronouncing the sentence related to the general circumstances of the crime. First, the court stated, "your conduct did cause or threatened serious harm to your father who is eighty years old, undergoing cancer treatment, and because of that his skin was very thin ***." Second, the court said, "a sentence is necessary to deter others ***. You did commit the offense against a person sixty or older. Your father was eighty at the time and it was in his own home, not yours or out on the street." These comments related to the nature and circumstances of the offense and do not imply the court used these factors to enhance defendant's sentence.

¶ 37    Even if the court used William's age as an aggravating factor, such use is not necessarily error. In *Thurmond*, the court stated when age is an element of the crime, the court can consider whether the victim is particularly young. *Thurmond*, 317 Ill. App. 3d at 1144, 741 N.E.2d at 301. The court reasoned "there is a difference between being under age 18 and being significantly under age 18," as our society considers sexual abuse of a much younger child even more reprehensible. *Id.* The judge in this case could have concluded the victim, who was 80 years old, was of an age significantly older than 60. We conclude the court did not err by mentioning the victim's age at sentencing.

¶ 38                    C. Ex-Wife's Son's Victim Impact Statement

¶ 39    Defendant argues the trial court abused its discretion by admitting and considering his ex-wife's son's (Matthew's) victim impact statement because the statement was "irrelevant, unsubstantiated, and prejudicial." The State argues the court did not abuse its discretion in considering the statement because the statement was admissible under the relaxed rules at sentencing hearings and defendant opened the door by injecting his desire to overcome his longtime substance-abuse issues.

¶ 40    First, we note defendant failed to object to Matthew's victim impact statement at the sentencing hearing, although he included it in his *pro se* motion for reduction of sentence. By failing to object at the sentencing hearing, defendant forfeited the issue. *People v. Mimms*, 312 Ill. App. 3d 226, 231, 726 N.E.2d 130, 134 (2000); *People v. Gonzales*, 285 Ill. App. 3d 102, 104, 673 N.E.2d 1181, 1183 (1996). Moreover, the Rights of Crime Victims and Witnesses Act (Act) (725 ILCS 120/9 (West 2010)) provides, "Nothing in this Act shall create a basis for

vacating a conviction or a ground for appellate relief in any criminal case." See *Mimms*, 312 Ill. App. 3d at 231, 726 N.E.2d at 134. See also *People v. Richardson*, 196 Ill. 2d 225, 230, 751 N.E.2d 1104, 1107 (2001); *People v. Hestand*, 362 Ill. App. 3d 272, 281, 838 N.E.2d 318, 325 (2005); *People v. Harth*, 339 Ill. App. 3d 712, 715, 791 N.E.2d 702, 705 (2003) (even though the trial court erred in admitting an impact statement from the victim's mother, section 9 precluded relief on appeal).

¶ 41    However, defendant argues the trial court erred in admitting Matthew's statement and further contends, by doing so, the court violated his due-process rights by considering irrelevant, unsubstantiated, and prejudicial information. Under the plain-error doctrine, we may consider unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error; or (2) a clear or obvious error occurred and that error is so serious it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Piatkowski*, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 410-11 (2007); *People v. Kopczick*, 312 Ill. App. 3d 843, 852, 728 N.E.2d 107, 114-15 (2000) (plain-error review applies to sentencing proceedings). Defendant has the burden of persuasion under both prongs of plain error. *People v. Wilmington*, 2013 IL 112938, ¶ 43, 983 N.E.2d 1015. The first step in a plain-error review is determining whether any error occurred. *People v. Walker*, 232 Ill. 2d 113, 124, 902 N.E.2d 691, 697 (2009). Accordingly, we determine first whether the consideration of Matthew's victim impact statement was error.

¶ 42    Section 6 of the Act (725 ILCS 120/6 (West 2010)) provides, where a defendant, as here, has been convicted of a violent crime and a victim of the violent crime or the victim's representative is present in the courtroom at the time of the sentencing hearing, the victim or his representative shall have *the right* to address the trial court about the impact defendant's conduct had on the victim. Further, immediate family members may be *permitted* to address the court regarding the impact defendant's criminal conduct had on them and the victim.

¶ 43    Here, Matthew's statement did not relate to the impact of the crimes for which defendant was being sentenced. In *People v. Hope*, 184 Ill. 2d 39, 702 N.E.2d 1282 (1998), our supreme court noted, while the details of prior crimes are admissible and relevant to aggravation at a sentencing hearing because they "illuminate the character and record" of a defendant, the impact of those crimes on their victims do not provide "such assistance." *Id.* at 52, 702 N.E.2d at 1288. Thus, *Hope* holds the impact of defendant's past crimes on other people is not relevant. We recognize *Hope* involved a sentencing decision by a jury in a death penalty case, but see no reason not to consider its application here. See *Richardson*, 196 Ill. 2d at 232, 751 N.E.2d at 1108-09 (courts should consider the relevance and materiality of a victim impact statement; impact evidence from victims other than victims of the offense on trial is irrelevant and inadmissible). Additionally, we note evidence of other crimes is admissible through live testimony at a sentencing hearing. See *People v. Harris*, 375 Ill. App. 3d 398, 411, 873 N.E.2d 584, 595 (2007), *aff'd on other grounds*, 231 Ill. 2d 582, 901 N.E.2d 367 (2008). "[C]riminal conduct for which there has been no prosecution or conviction may be considered in sentencing. Such evidence, however, should be presented by witnesses who can be confronted and cross-examined, rather than by hearsay allegations in the presentence report, and the defendant should have an opportunity to rebut the testimony." *People v. Jackson*, 149 Ill. 2d

540, 548, 599 N.E.2d 926, 930 (1992) (citing *People v. La Pointe*, 88 Ill. 2d 482, 498-99, 431 N.E.2d 344, 351 (1981)).

¶ 44    Many courts have noted, for evidence to be admitted at a sentencing hearing, it must be reliable and relevant. See, *e.g.*, *Harris*, 375 Ill. App. 3d at 409, 873 N.E.2d at 594; *Jackson*, 149 Ill. 2d at 549, 599 N.E.2d at 930. The ordinary rules of evidence which apply at trial are relaxed at a sentencing hearing, where a court has the ability to consider a variety of sources and types of information when determining a sentence. *Harris*, 375 Ill. App. 3d at 408, 873 N.E.2d at 593. As noted above, while hearsay evidence is allowable at a sentencing hearing, such evidence should be presented in the form of live testimony, rather than hearsay allegations contained in an attachment to a presentence report. *Id*. at 411, 873 N.E.2d at 595. If a defendant has been prejudiced by the procedure used or the material considered by the trial court, the sentence cannot stand. *Id.* at 409, 873 N.E.2d at 594.

¶ 45    Here, probation attached Matthew's victim impact statement to the PSI. Matthew's statement recounted defendant's misconduct when defendant lived with Matthew and his mother. The impact of that conduct on Matthew was irrelevant at this sentencing hearing because it was not a result of the conduct for which defendant was charged. Matthew could have been called as a witness to testify about defendant's misconduct (as opposed to submitting a written statement about the impact defendant's prior misconduct had on him), as such behavior reflected on defendant's character. However, it was error for the statement to be attached to the PSI and considered by the court in the fashion it was.

¶ 46    Merely finding error in this procedure does not necessarily justify reversal of defendant's sentence. We will reverse only if defendant was unfairly prejudiced or his right to due process was violated. "Due process bars the introduction of evidence that is so unduly prejudicial that it renders the sentencing hearing fundamentally unfair." *Harth*, 339 Ill. App. 3d at 715, 791 N.E.2d at 705 (citing *Payne v. Tennessee*, 501 U.S. 808, 825 (1991)); *Richardson*, 196 Ill. 2d at 233, 751 N.E.2d at 1109.

¶ 47    While it is clear the trial court considered Matthew's victim impact statement, it is also clear defendant was not so unduly prejudiced his sentence must be vacated. Matthew's mother, Carol, gave an extensive victim impact statement covering many of the items Matthew discussed in his statement. There has been no contention Carol's statement was improperly allowed. Further, after reading her statement, Carol was questioned by defendant's counsel.

¶ 48    Defendant's PSI reflects the following convictions, ranging from 1987 to 2006: (1) resisting a police officer, (2) aggravated battery of a police officer, (3) criminal trespass to a residence, (4) aggravated battery, (5) battery, (6) battery, (7) felony domestic battery, (8) domestic battery, (9) battery, (10) felony domestic battery, and (11) driving under the influence. Several of the batteries and an aggravated battery involved three separate spouses. One of the batteries was of William, who was the victim of the aggravated battery in the present case.

¶ 49    Moreover, the State did not rely on Matthew's statement when making its sentencing arguments. Instead, the State noted defendant had not contributed financially to the support of his six-year-old son and, thus, there would be no financial hardship to his dependent. The State argued defendant was likely to reoffend based on his extensive criminal history and pointed out defendant had been placed on probation for battery-related offenses six times. During four of those probations, petitions to revoke were filed. The State also noted defendant violated a court's order of protection by going to Carol's home and further had threatened her during the

pendency of this case, demonstrating a base indifference to the pending proceedings and court orders.

¶ 50 The trial court also considered Carol's victim impact statement, defendant's lengthy criminal history, the circumstances of the crime, the court's finding the crime resulted from conduct likely to recur, and defendant was unlikely to comply with terms of probation. Each factor weighed in favor of a lengthier sentence. The court also had little evidence in mitigation because defendant failed to attend three appointments regarding the PSI.

¶ 51 We find the trial court would have imposed the same sentence even if it had never read Matthew's statement. Therefore, defendant cannot show unfair prejudice or a violation of due process.

¶ 52                                    D. Defendant's Posttrial Claim of
                                       Ineffective Assistance of Counsel

¶ 53 Defendant argues the trial court erred in failing to conduct any inquiry into his postsentencing claims of ineffective assistance of counsel. The State concedes error. We accept the State's concession.

¶ 54 "The law requires the trial court to conduct some type of inquiry into the underlying factual basis, if any, of a defendant's *pro se* posttrial claim of ineffective assistance of counsel." *People v. Moore*, 207 Ill. 2d 68, 79, 797 N.E.2d 631, 638 (2003). In *Moore*, the supreme court remanded for "the limited purpose of allowing the trial court to conduct the required preliminary investigation" because the trial court failed to conduct any examination into the factual basis of defendant's ineffective-assistance allegations. *Id.* at 81, 797 N.E.2d at 640-41. This limited investigation is often referred to as a *Krankel* hearing, in reference to *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984) (developing the common-law procedure, refined in subsequent cases, for *pro se* defendants' claims alleging ineffective assistance of counsel). See *People v. Patrick*, 2011 IL 111666, ¶ 42, 960 N.E.2d 1114.

¶ 55 Here, defendant filed a *pro se* posttrial motion for reduction of sentence alleging, among other issues, his counsel at sentencing refused to subpoena witnesses on his behalf. The trial court appointed defendant's sentencing attorney to represent defendant at the hearing on defendant's motion and a new judge, Judge Freese, presided over the hearing. At the hearing, the court did not mention defendant's allegations relating to his counsel's performance, nor did counsel bring them to the court's attention. (We note, while defendant contends the trial court ordered his attorney to subpoena witnesses for the sentencing hearing, the record reflects the court was interested in no further delays of the matter. The State's sentencing witnesses had appeared on at least two occasions where the sentencing hearing was continued because defendant was either not present or not ready to proceed. Thus, the court appeared to be saying, "if you are planning on having witnesses, subpoena them so I do not have to continue the sentencing hearing again.") We also note defendant would have to show the witnesses would have made a difference in the sentence imposed. See *Jackson*, 149 Ill. 2d at 553-54, 599 N.E.2d at 932.

¶ 56 As the trial court made no inquiry into defendant's ineffective-assistance-of-counsel claim, we remand for an informal *Krankel* inquiry. If the court determines the allegations show possible neglect of the case, the court should appoint new counsel to represent defendant in a hearing regarding his ineffective-assistance-of-counsel claim. *Moore*, 207 Ill. 2d at 78, 797

N.E.2d at 637. However, "[i]f the court determines that the claim of ineffectiveness is spurious or pertains only to trial strategy, the court may then deny the motion and leave standing defendant's convictions and sentences." *Id.* at 81, 797 N.E.2d at 640. See also *People v. Jolly*, 2013 IL App (4th) 120981, 999 N.E.2d 735.

¶ 57                                                    III. CONCLUSION

¶ 58          For the reasons stated, we remand the cause with directions to conduct an initial *Krankel* inquiry and otherwise affirm. Because the State successfully defended a portion of this appeal, we grant the State its $50 statutory assessment against defendant as costs of this appeal. See *People v. Williams*, 384 Ill. App. 3d 327, 342, 892 N.E.2d 620, 633 (2008); see 55 ILCS 5/4-2002(a) (West 2012).

¶ 59          Affirmed in part and remanded in part with directions.