**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 180703-U

Order filed March 8, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0703 Circuit No. 18-CF-145 |
| | ) | |
| LARRY E. FULLER, | ) ) | Honorable John P. Vespa, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE LYTTON delivered the judgment of the court.
Presiding Justice McDade and Justice O'Brien concurred with the judgment.

_____

**ORDER**

¶ 1    *Held*:  The circuit court abused its discretion in considering irrelevant and unreliable evidence at sentencing.

¶ 2    Defendant, Larry E. Fuller, appeals following his conviction for residential burglary. He challenges his sentence of 30 years' imprisonment on multiple grounds. We vacate the sentence and remand for resentencing.

¶ 3                                   I. BACKGROUND

¶ 4    The State charged defendant by indictment with home invasion (720 ILCS 5/19-6(a)(6) (West 2018)), aggravated criminal sexual assault (*id.* § 11-1.30(a)(4)), criminal sexual assault (*id.* § 11-1.20(a)(1)), residential burglary (*id.* § 19-3(a)), aggravated criminal sexual abuse (*id.* § 11-1.60(a)(6)), criminal sexual abuse (*id.* § 11-1.50(a)(1)), and criminal trespass to residence (*id.* § 19-4(a)(2)). The charges alleged, *inter alia*, that defendant entered the residence of H.B. with the intent of committing criminal sexual abuse while therein.

¶ 5    Defendant agreed to plead guilty to residential burglary, a Class 1 felony, in exchange for the State dropping the remaining charges. At the plea hearing, the parties agreed that defendant would be sentenced as a Class X offender because of his criminal history.

¶ 6    The factual basis for the plea established that H.B. awoke one morning to find defendant in her bed. H.B. knew defendant because he was married to her mother. H.B. yelled at defendant to leave, but he did not do so. A struggle ensued. According to the State, "[defendant] pulled [H.B.'s] pants down and tried to assault her, but he was not able to penetrate her. He did touch her thigh. He then left." The court accepted the plea.

¶ 7    A presentence investigation report (PSI) was filed and introduced at sentencing. The PSI showed that defendant had five prior felony convictions. Those convictions included three felonies of Class 2 or higher: a 1993 conviction for Class 2 attempted criminal sexual assault, a 1999 conviction for Class 2 aggravated criminal sexual abuse, and a 2005 conviction for Class X home invasion. Defendant's two other felony convictions were for Class 4 unlawful possession of a controlled substance and Class 3 aggravated battery.

¶ 8    Attached to the PSI was a victim impact statement from H.B. In the statement, H.B. explained that, in addition to the instant offense, defendant sexually assaulted her when she was 14 years old. She asked that defendant receive the maximum sentence.

¶ 9        Also attached to the PSI was a letter from Beth Kennell. Kennell wrote that she had known H.B. since H.B. was seven years old. Kennell described the changes in H.B. following defendant's assaults, including one that occurred before H.B. was 16. Kennell further wrote:

> "The defendant shows recidivism when looking at his history of charges and hope that is considered when choosing his sentence. He is a repeat offender to the same victim in this case and a sexual predator. Because of the defendant's continual sexual violations and stalking behavior to [H.B.], she is forever changed."

Kennell also lamented "the system continually giving the defendant a slap on the risk [*sic*]." Kennell asked that defendant be given a maximum sentence and concluded: "The defendant has not been a productive member of society for over 27 years, yet [H.B.] has been. [H.B.] and all other young women who have been a victim of the defendant could rest easier knowing he will die in prison ***." The letter was signed "Beth M. Kennell MBA/MLTII(ASCP)$^{cm}$ / DMD(ΔMΔ)."

¶ 10        The parties did not offer formal evidence in aggravation or mitigation. In argument, the State averred that H.B. was the victim of defendant's aggravated criminal sexual abuse conviction, which the defense did not dispute.

¶ 11        In issuing the sentence, the court found that defendant's criminal history was an aggravating factor. The court observed that defendant "is the very definition of a dangerous person who should not be in society." Of defendant's criminal history, the court also stated: "Five felony convictions. Six to 30 range. Five felony convictions in and of itself pushes this way up, way beyond the minimum." The court sentenced defendant to 30 years' imprisonment.

¶ 12        Defendant subsequently filed a motion to reconsider sentence, in which he alleged that the court had put too much emphasis on his criminal history and not enough emphasis on certain mitigating factors.

3

¶ 13    At the hearing on the motion to reconsider sentence, defense counsel made those same arguments. Immediately following counsel's argument, the court said: "So [defense counsel], I look at the letter from Beth Kennell ***. She's got MBA/MLTIIDMD. I don't know if that was a counselor. Do the lawyers know who Beth Kennell was in this?" The State informed the court that Kennell was "a friend of the victim." The court went on to read a large portion of Kennell's letter aloud. The court ultimately denied the motion to reconsider.

¶ 14                                II. ANALYSIS

¶ 15    On appeal, defendant argues that his sentence was improper on two grounds. Specifically, he contends that the court erred in considering Kennell's letter at sentencing and that the sentence was the product of an improper double enhancement.[1] We vacate defendant's sentence and remand for resentencing.

¶ 16                               A. Jurisdiction

¶ 17    Initially, the State argues that this court lacks jurisdiction to entertain defendant's appeal. It maintains that defendant's plea was a negotiated plea, and that Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) therefore required him to file a motion to withdraw the plea in order to perfect an appeal challenging his sentence.

¶ 18    Rule 604(d) mandates that "[n]o appeal shall be taken upon a *negotiated* plea of guilty challenging the sentence as excessive unless the defendant, within 30 days of the imposition of sentence, files a motion to withdraw the plea of guilty and vacate the judgment." (Emphasis added.) *Id.* The rule further defines a negotiated plea as "one in which the prosecution has bound itself to recommend a specific sentence, or a specific range of sentence, or where the prosecution

---

[1]Defendant also raises a more general excessive sentence argument, on the grounds that the circuit court "overemphasized" defendant's criminal history. For the reasons set forth below, we need not address that argument in this appeal. *Infra* ¶¶ 27-29.

has made concessions relating to the sentence to be imposed and not merely to the charge or charges then pending." *Id.*

¶ 19    Defendant's plea was not a negotiated plea as defined in Rule 604(d). The State's only consideration for defendant's plea was its dropping of the remaining charges. It made no sentencing recommendation. As defendant's plea was not "negotiated," Rule 604(d) only required that defendant move for reconsideration of his sentence in order to challenge his sentence on appeal. *Id.* Defendant, of course, did file such a motion. Accordingly, we have jurisdiction to address defendant's challenge to his sentence.

¶ 20                                    B. Sentencing

¶ 21    The Illinois Constitution requires that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The ordinary rules of evidence that apply at trial do not necessarily apply at sentencing. *People v. Williams*, 149 Ill. 2d 467, 490 (1992). A sentencing court "may search anywhere within reasonable bounds for other facts which may serve to aggravate or mitigate the offense." *People v. Harris*, 375 Ill. App. 3d 398, 408 (2007). This includes criminal conduct which has not resulted in conviction or prosecution. *People v. Hudson*, 157 Ill. 2d 401, 452 (1993).

¶ 22    The only requirement for the admission of evidence at sentencing is that the evidence must be relevant and reliable. *People v. Terrell*, 185 Ill. 2d 467, 505 (1998). "[W]hile hearsay evidence is allowable at a sentencing hearing, such evidence should be presented in the form of live testimony, rather than hearsay allegations contained in an attachment to a presentence report." *People v. Raney*, 2014 IL App (4th) 130551, ¶ 44. See also *People v. English*, 353 Ill. App. 3d 337, 339 (2004) ("Evidence of other criminal conduct should be presented by witnesses, who can

5

be confronted and cross-examined, rather than by hearsay allegations in the presentence report, so that the defendant has an opportunity to rebut the testimony."). The determination that evidence at sentencing is relevant and reliable, and therefore admissible, is a matter lying within the sound discretion of the sentencing court. *Hudson*, 157 Ill. 2d at 450. "If it is shown that the defendant has been prejudiced by the procedure adopted or by the material considered by the trial court in conducting its inquiry, the resultant penalty will not be allowed to stand." *Harris*, 375 Ill. App. 3d at 409.

¶ 23    To be sure, portions of Kennell's letter were relevant and at least presumably reliable. Kennell described the length of her relationship with H.B., thus establishing a basis for her knowledge of how the instant offense had impacted her. Kennell also described, however, the impact that defendant's 1999 offense had on H.B. While the fact of that offense was relevant in that it had bearing on defendant's rehabilitative potential, the impact of that offense on H.B. was not relevant. See *Raney*, 2014 IL App (4th) 130551, ¶ 45 ("The impact of [prior] conduct on [the victim] was irrelevant at this sentencing hearing because it was not a result of the conduct for which defendant was charged.").

¶ 24    Of far more concern, however, are the allusions made by Kennell to criminal conduct not explicitly referenced in the PSI. For instance, Kennell referenced "all other young women who have been a victim of the defendant." Yet the PSI shows only one other sexual offense, defendant's 1993 conviction for attempted criminal sexual assault. Kennell does not describe in her letter the basis for her purported knowledge that defendant has victimized some untold number of young women. Similarly, Kennell references defendant's "continual *** stalking behavior" toward H.B., an allegation not found anywhere else in the record, including H.B.'s victim impact statement.

6

¶ 25    Furthermore, Kennell's personal opinion concerning the appropriate sentence for defendant was not relevant to the circuit court's determination. Nor was Kennell's apparent independent analysis of defendant's criminal history, sentencing history, and recidivism of any relevance. While the Rights of Crime Victims and Witnesses Act (Act) allows crime victims or immediate family members to make victim impact statements at sentencing (725 ILCS 120/6(a) (West 2018)), the parties here agree that Kennell, as a friend of the victim, did not fall under the ambit of the Act. In any event, victim impact evidence must still be relevant and reliable in order to be admitted. *People v. Pavlovskis*, 229 Ill. App. 3d 776, 782 (1992).

¶ 26    We are also compelled to address the manner in which Kennell signed her letter. By including an extensive professional suffix, Kennell gave the impression that her letter was written in some sort of professional capacity. Indeed, citing the suffix, the sentencing court wondered if Kennell was a counselor. Whether intentional or not, this signature tended to give the facts and opinions expressed in the letter an unearned sense of credibility and reliability.

¶ 27    In short, Kennell's letter was replete with unreliable and prejudicial hearsay. See *People v. Kirk*, 62 Ill. App. 3d 49, 54 (1978) ("The prejudicial effect of the references in the reports was heightened by the vagueness with which defendant's prior involvement with the law was reported."). The prejudicial impact of Kennell's statements was compounded by the fact that she was not available for cross-examination. Moreover, there can be no doubt that the circuit court placed significant weight on the letter, as it read from the letter at length at the hearing on the motion to reconsider sentence. As it has thus been shown that defendant was prejudiced by the court's consideration of inadmissible evidence at sentencing, that sentence must not be allowed to stand. See *Harris*, 375 Ill. App. 3d at 409. Accordingly, we vacate the sentence and remand for resentencing.

7

¶ 28    Finally, defendant contends that the court applied an improper double enhancement when it stated: "Five felony convictions. Six to 30 range. Five felony convictions in and of itself pushes this way up, way beyond the minimum." Defendant points out that two of his felony convictions had already been utilized to actually raise the sentencing range from Class 1 to Class X. See 730 ILCS 5/5-4.5-95(b) (West 2018) (requiring that a defendant convicted of a Class 1 or 2 felony, having been twice previously convicted of Class 2 felonies or greater, be sentenced under the Class X range). Where two felony convictions were utilized first to subject him to Class X sentencing, then again as part of the justification a higher sentence within that range, defendant contends that an improper double enhancement occurred.

¶ 29    Because we have vacated defendant's sentence based upon the circuit court's consideration of inadmissible evidence, we need not address defendant's double-enhancement argument. However, we direct the parties and the court on remand to be cognizant of the issue.

¶ 30                                III. CONCLUSION

¶ 31    The judgment of the circuit court of Peoria County is vacated and the cause is remanded for resentencing.

¶ 32    Sentence vacated; cause remanded.